416 So.2d 223 (1982)
Mrs. Elnora HALL
v.
Jeanette SCOTT, et al.
No. 14834.
Court of Appeal of Louisiana, First Circuit.
May 25, 1982.
Rehearing Denied July 13, 1982.
*224 Paul H. Spaht, Baton Rouge, for plaintiff-appellee Mrs. Elnora Hall.
Samuel R. Cicero, Asst. Parish Atty., Baton Rouge, for defendant-appellee City of Baton Rouge.
Arthur H. Andrews, Baton Rouge, for defendant-appellee Jeanette Scott and Aetna Casualty & Surety Co.
Robert D. Hoover, Baton Rouge, for defendant-appellee Geraldine Bell and United States Fidelity & Guaranty Co. as Liability Insurer of Geraldine Bell only.
Frank A. Fertitta, Baton Rouge, for defendant-appellee United States Fidelity & Guaranty Co. as alleged Underinsured Motorist Carrier of Geraldine Bell.
Robert J. Vandaworker, Baton Rouge, for defendant-appellant Western Pioneer Ins. Co.
Before LEAR, CARTER and LANIER, JJ.
LANIER, Judge.
The plaintiff, Elnora Hall, is a citizen of California and she has lived there since 1949. In December of 1977, Hall came to Louisiana for a visit. On December 21, 1977, at approximately 4:40 P.M., Hall was a passenger in an automobile owned and operated by her daughter, Geraldine Bell, at the intersection of Greenwell Springs Road and North Ardenwood, in East Baton Rouge Parish, Louisiana, when there was a collision between that vehicle and an automobile being operated by Jeanette Scott. This intersection is controlled by an electric signal system. As a result of the accident, Hall received substantial injuries.
Hall filed this suit for damages in East Baton Rouge Parish. The original defendants were Jeanette Scott and her insurer, Aetna Casualty and Surety Company (hereinafter referred to as Aetna) and Geraldine Bell and her insurer, United States Fidelity and Guaranty Company (hereinafter referred to as USF&G).
Hall first amended her petition to allege that USF&G had uninsured motorist coverage on the automobile of Bell and that such coverage was applicable to her. Bell and USF&G answered and asserted a third party demand against Scott and Aetna.
Hall then filed a second amending petition joining the Parish of East Baton Rouge on the grounds that it owned the traffic signal at the intersection where the accident occurred and it was defective; joined Marbelite Co., Inc. on the grounds that it manufactured and designed the defective traffic signal system; and joined Western Pioneer Insurance Company (hereinafter referred to as Western Pioneer) on the grounds that it had issued a policy to Hall which provided uninsured motorist and medical payments coverage. This pleading also asserted a demand against USF&G under the medical payments coverage of the policy issued to Bell.
Aetna and Scott filed a third party demand against Bell and USF&G for contribution.
Western Pioneer filed declinatory exceptions pleading improper service and lack of personal jurisdiction. The exception alleged that Western Pioneer was a California corporation and did not engage in any business activities in the State of Louisiana, confined its operations completely to the State of California and did no business in Louisiana, that service on the Secretary of State of the State of Louisiana was not proper service, and that the courts of Louisiana *225 had no personal jurisdiction. A hearing was held on these exceptions and they were overruled. Reserving all rights under the exceptions, Western Pioneer answered the suit.
Hall filed a third amending petition alleging that Western Pioneer, Aetna and USF&G were arbitrary, capricious and in bad faith in the handling of her claims. With respect to Western Pioneer, Hall alleged that she was entitled to damages for mental anguish in the amount of $100,000 and punitive damages in the amount of $250,000 plus reasonable attorney fees.
At this point in the proceedings, Hall compromised her claims against Bell and USF&G, Scott and Aetna, and Marbelite Co., Inc. This case went to trial with only three defendants: (1) Parish of East Baton Rouge; (2) USF&G as the UM carrier on the Bell automobile; and (3) Western Pioneer.
At the conclusion of Hall's evidence, the Parish of East Baton Rouge moved for a directed verdict and it was granted. No appeal has been taken from this ruling.
After completion of the trial, the case was taken under advisement. On May 1, 1981, the trial judge rendered written reasons with these findings:
1. Both Bell and Scott were guilty of negligence which was a proximate cause of the accident and Hall's damages;
2. The damages of Hall were substantial;
3. Hall was entitled to recover a judgment against USF&G under its uninsured motorist coverage of $10,000;
4. Louisiana law applies to interpret the policy of Western Pioneer;
5. Hall is entitled to "stack" the uninsured motorist coverage of $15,000 under the Western Pioneer policy so as to recover $30,000 because she had two cars in California;
6. Hall is entitled to recover $500 from Western Pioneer under the medical payments coverage;
7. Hall is entitled to recover $1,000 in penalties and attorney fees from Western Pioneer.
Judgment was rendered accordingly.
USF&G satisfied the judgment against it. Western Pioneer took this suspensive and devolutive appeal. Hall filed an answer to the appeal claiming that the trial court erred in failing to award her $100,000 for mental and emotional anguish and punitive damages in the amount of $250,000, plus reasonable attorney fees.
Western Pioneer contends that the trial court committed error by overruling its declinatory exception pleading lack of jurisdiction over the person. Western Pioneer is a California insurance company. Elnora Hall is a resident of California and the Western Pioneer policy was issued and delivered in California. There is no evidence of record to show that Western Pioneer has written insurance policies or conducted any of its business activities in Louisiana. Hall's policy with Western Pioneer contains the following language:
"1. Policy period, Territory: This policy applies only to accidents, occurrences and loss during the policy period while the automobile is within the United States of America, its territories or possessions, or Canada, or is being transported between ports thereof." (Emphasis added).
We believe that the resolution of the jurisdiction issue is controlled by the holding of our brethren in the Third Circuit in the case of Jones v. MFA Mutual Insurance Company, 398 So.2d 10 (La.App. 3rd Cir. 1981), writs refused 399 So.2d 586 (La.1981). The facts of that case are set out at page 11 of the Southern Reporter as follows:
"On February 20, 1980, Luther Thomas Jones, a resident of Alabama, was fatally injured in a one-vehicle accident on Louisiana Highway 35, in Vermilion Parish. Jones was a guest passenger in the vehicle when the driver lost control of the vehicle causing it to overturn. At the time of the accident, the vehicle was owned by Bobby G. Goss, a resident of Mississippi, and driven by Bonnie T. Williams, a resident of Alabama.

*226 "Stephen C. Jones, a resident of Sabine Parish, Louisiana, the plaintiff in the original action, filed suit in Sabine Parish for the wrongful death of Luther Thomas Jones. Subsequently, Edna Lee Jones Oswalt, the mother of the deceased and a resident of Alabama, intervened in the suit filed by Stephen C. Jones, naming Standard Fire Insurance Company of Alabama, Luther Thomas Jones's uninsured motorist carrier, as an additional defendant. Service of process was made on the Louisiana Secretary of State and on Standard Fire by certified mail."
In Jones, supra, the trial judge overruled the uninsured motorist insurers exceptions of jurisdiction over the person. The Third Circuit granted a supervisory writ and reversed for the following reasons set forth at pages 12 and 13 of the Southern Reporter:
"It is stipulated that Standard Fire is a foreign insurance company domiciled in Alabama. It is further stipulated that Standard Fire is not licensed to do business in Louisiana nor is it in fact doing business in Louisiana and that it has no agents or employees in Louisiana. It is also stipulated that Standard Fire's insured, Luther Thomas Jones, was a resident of Alabama and that the policy of insurance was issued and delivered in the state of Alabama.
"Jurisdiction over the person is based on service of process. LSA-C.C.P. art. 6. Louisiana's `longarm' statute, LSA-R.S. 13:32011, confers personal jurisdiction over non-residents for causes of action arising under the circumstances set forth in the cited statute. In light of the stipulated facts, we conclude that the cause of action asserted by intervenor does not arise under any of the circumstances set forth in the cited statute and therefore such statute cannot be relied upon as conferring in the courts of Louisiana personal jurisdiction over Standard Fire.

"1 § 3201. Personal jurisdiction over nonresidents
"A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from the nonresident's
(a) transacting any business in this state;
(b) contracting to supply services or things in this state;
(c) causing injury or damage by an offense or quasi offense committed through an act or omission in this state;
(d) causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state;
(e) having an interest in, using or possessing a real right or immovable property in this state; or
(f) non-support of a child or spouse or a former spouse domiciled in this state to whom an obligation of support is owed and with whom the non-resident formerly resided in this state."
"Neither can personal jurisdiction over Standard Fire be based on the `Louisiana Motorist Longarm Statute', LSA-R.S. 13:3474. This statute provides that a non-resident and his insurer, by operating a motor vehicle on the public highways of Louisiana, are deemed to have submitted to the jurisdiction of this state and to have appointed the Secretary of State as their agent for service of process. This statute is inapplicable to the instant case because it has been stipulated that Standard Fire's insured, Luther Thomas Jones, was not the operator of the vehicle involved, but a guest passenger.

"Furthermore, the record reflects that there has been no `minimum contacts' between Standard Fire and the state of Louisiana to satisfy due process requirements. International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); Adcock v. Surety ReSearch & Inv. Corp., 344 So.2d 969 (La. 1977). Standard Fire has had no contact whatever with the state of Louisiana. Its only contact is that it insures persons whom it is foreseeable will travel to Louisiana and will be involved in litigation in Louisiana. The United States Supreme Court in World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); held that `foreseeability' alone does not provide sufficient minimum contacts to support jurisdiction *227 under the Due Process Clause."[1] (Emphasis added).
We believe that the holding of the United States Supreme Court in World-Wide Volkswagen Corporation v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) is particularly pertinent to the facts of this case. The facts of World-Wide Volkswagen are set out at pages 562 and 563 of the Supreme Court Reporter as follows:
"Respondents Harry and Kay Robinson purchased a new Audi automobile from petitioner Seaway Volkswagen, Inc. (Seaway) in Massena, N.Y., in 1976. The following year the Robinson family, who resided in New York, left that State for a new home in Arizona. As they passed through the State of Oklahoma, another car struck their Audi in the rear, causing a fire which severely burned Kay Robinson and her two children.
"The Robinsons subsequently brought a products liability action in the District Court for Creek County, Okla., claiming that their injuries resulted from defective design and placement of the Audi's gas tank and fuel system. They joined as defendants the automobile's manufacturer, Audi NSU Auto Union Aktiengesellschaft (Audi); its importer Volkswagen of America, Inc. (Volkswagen); its regional distributor, petitioner World-Wide Volkswagen Corporation (World-Wide); and its retail dealer, petitioner Seaway. Seaway and World-Wide entered special appearances, claiming that Oklahoma's exercise of jurisdiction over them would offend the limitations on the State's jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment.
"The facts presented to the District Court showed that World-Wide is incorporated and has its business office in New York. It distributes vehicles, parts and accessories, under contract with Volkswagen, to retail dealers in New York, New Jersey, and Connecticut. Seaway, one of these retail dealers, is incorporated and has its place of business in New York. Insofar as the record reveals, Seaway and World-Wide are fully independent corporations whose relations with each other and with Volkswagen and Audi are contractual only. Respondents adduced no evidence that either World-Wide or Seaway does any business in Oklahoma, ships or sells any products to or in that State, has an agent to receive process there, or purchases advertisements in any media calculated to reach Oklahoma." (Footnotes Omitted).
The court then stated the law applicable in these cases at page 564 of the Supreme Court Reporter as follows:
"The Due Process Clause of the Fourteenth Amendment limits the power of a state court to render a valid personal judgment against a nonresident defendant. Kulko v. Superior Court, 436 U.S. 84, 91, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 *228 (1978). A judgment rendered in violation of due process is void in the rendering State and is not entitled to full faith and credit elsewhere. Pennoyer v. Neff, 95 U.S. 714, 732-733, 24 L.Ed. 565 (1878). Due process requires that the defendant be given adequate notice of the suit, Mullane v. Central Hanover Trust Co., 339 U.S. 306, 313-314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950), and be subject to the personal jurisdiction of the court, International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In the present case, it is not contended that notice was inadequate; the only question is whether these particular petitioners were subject to the jurisdiction of the Oklahoma courts.
"As has long been settled, and as we reaffirm today, a state court may exercise personal jurisdiction over a nonresident defendant only so long as there exist `minimum contacts' between the defendant and the forum State. International Shoe Co. v. Washington, supra, at 316, 66 S.Ct., at 158. The concept of minimum contacts, in turn, can be seen to perform two related, but distinguishable, functions. It protects the defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to ensure that the States through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system.
"The protection against inconvenient litigation is typically described in terms of `reasonableness' or `fairness.' We have said that the defendant's contacts with the forum State must be such that maintenance of the suit `does not offend "traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, supra, at 316, 66 S.Ct., at 158, quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940). The relationship between the defendant and the forum must be such that it is `reasonable ... to require the corporation to defend the particular suit which is brought there.' 326 U.S., at 317, 66 S.Ct., at 158. Implicit in this emphasis on reasonableness is the understanding that the burden on the defendant, while always a primary concern, will in an appropriate case be considered in light of other relevant factors, including the forum State's interest in adjudicating the dispute, see McGee v. International Life Ins. Co., 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957); the plaintiff's interest in obtaining convenient and effective relief, see Kulko v. Superior Court, supra, 436 U.S., at 92, 98 S.Ct., at 1697, at least when that interest is not adequately protected by the plaintiff's power to choose the forum, cf. Shaffer v. Heitner, 433 U.S. 186, 211, n. 37, 97 S.Ct. 2569, 2583, n. 37, 53 L.Ed.2d 683 (1977); the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies, see Kulko v. Superior Court, supra, 436 U.S., at 93, 98, 98 S.Ct., at 1697, 1700."
The Supreme Court then concluded that there was no personal jurisdiction over the retailer and the regional distributor with the following observations found at pages 556 and 567 of the Supreme Court Reporter as follows:
"Applying these principles to the case at hand, we find in the record before us a total absence of those affiliating circumstances that are a necessary predicate to any exercise of state-court jurisdiction. Petitioners carry on no activity whatsoever in Oklahoma. They close no sales and perform no services there. They avail themselves of none of the privileges and benefits of Oklahoma law. They solicit no business there either through salespersons or through advertising reasonably calculated to reach the State. Nor does the record show that they regularly sell cars at wholesale or retail to Oklahoma customers or residents or that they indirectly, through others, serve or seek to serve the Oklahoma market. In short, respondents seek to base jurisdiction on one, isolated occurrence and whatever inferences can be drawn therefrom; the *229 fortuitous circumstance that a single Audi automobile, sold in New York to New York residents, happened to suffer an accident while passing through Oklahoma.
* * * * * *
"This is not to say, of course, that foreseeability is wholly irrelevant. But the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there. See Kulko v. Superior Court, supra, 436 U.S., at 97-98, 98 S.Ct., at 1699-1700; Shaffer v. Heitner, supra, 433 U.S., at 216, 97 S.Ct., at 2586, and see id., at 217-219, 97 S.Ct., at 2586-2587 (Stevens, J., concurring in the judgment). The Due Process Clause, by ensuring the `orderly administration of the laws,' International Shoe Co. v. Washington, 326 U.S., at 319, 66 S.Ct., at 159, gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.
* * * * * *
"But there is no such or similar basis for Oklahoma jurisdiction over World-Wide or Seaway in this case. Seaway's sales are made in Massena, N. Y. World-Wide's market, although substantially larger, is limited to dealers in New York, New Jersey, and Connecticut. There is no evidence of record that any automobiles distributed by World-Wide are sold to retail customers outside this tri-State area. It is foreseeable that the purchasers of automobiles sold by World-Wide and Seaway may take them to Oklahoma. But the mere `unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.' Hanson v. Denckla, supra, [357 U.S. 235] at 253, 78 S.Ct. [1228] at 1239-1240 [2 L.Ed.2d 1283]." (Footnote Omitted).
Had Mrs. Hall been the operator of a motor vehicle in the State of Louisiana and negligently caused injury to another, then clearly this State would have personal jurisdiction over her liability insurance carrier for the damages she caused in tort. La.R.S. 13:3201 (Longarm Statute); La.R.S. 13:3474 (Non-resident Motorist Statute); and La.R.S. 22:655 (Direct Action Statute). However, this is a suit in contract by a California insured against her California insurer for casualty and medical payment claims under a contract written and delivered in California. Booth v. Fireman's Fund Insurance Company, 253 La. 521, 218 So.2d 580 (1968); Bannon v. Edrington, 392 So.2d 186 (La.App. 4th Cir. 1980). Although the trial judge ruled that the law of Louisiana was applicable to this dispute, Hall, at page 18 of her original appellate brief, agreed that California law was applicable. By way of answer to the appeal and by brief, Hall requested additional damages for mental anguish and punitive damages, obviously under California law.[2] In a supplemental brief, Hall advised that she "prefers the application of California law, because that law gives her greater protection against the action of WP involved here." Western Pioneer at all times during this appeal has argued that the law of California is applicable.
There is no evidence in the record to show that Western Pioneer solicits insurance, issues or delivers policies, or collects or receives premiums in Louisiana. There is no evidence showing that it has an advertising campaign calculated to reach customers in this State. Hall is a California resident with a claim against a California corporation on a contract entered into and delivered in California that she wishes to *230 have interpreted under California law. Under these circumstances, there is not sufficient contact between Western Pioneer and Louisiana to give this State personal jurisdiction.
Hall argues that because the Western Pioneer policy provision quoted above covers risks in all States of the United States that this constitutes "transacting business" in Louisiana and gives this State personal jurisdiction, citing La.R.S. 22:1253(A)[3] and a series of federal cases. Commonwealth of Puerto Rico v. SS Zoe Colocotroni, 628 F.2d 652 (1st. Cir. 1980); Magnus Maritec International, Inc. v. SS St. Panteleimon, 444 F.Supp. 567 (S.D.Tex. 1978); Fukaya v. Velho, 416 F.Supp. 785 (D.C.Guam 1976); Humble Oil & Refining Company v. M/V John E. Coon, 207 F.Supp. 45 (E.D.La.1962); Schwabach & Company v. Gulf Shipside Storage Corporation, 173 F.Supp. 105 (E.D.La.1959); Wheat v. White, 38 F.Supp. 791 (E.D.La.1941). Insofar as these cases are in conflict with World-Wide Volkswagen, they are overruled. In Jones v. MFA Mutual Insurance Company, supra, the court considered the fact that the insured person would foreseeably travel to another state and be involved in litigation but determined that this was not a sufficient contact to satisfy Due Process requirements on a suit in contract under uninsured motorist coverage. We agree with this holding. Further, we do not agree that a California corporation "transacts business" in Louisiana when it enters into a contract with a California resident in the State of California for uninsured motorist and medical payments coverage.
Hall argues that by making an appearance at the deposition of Mrs. Elnora Hall that Western Pioneer made a general appearance as provided for in Article 7 of the Code of Civil Procedure and waived any objection to jurisdiction over the person. The record reflects that on December 27, 1979, Geraldine Bell and USF&G filed a notice of their intention to take the oral deposition of Mrs. Hall on January 8, 1980, in Baton Rouge, Louisiana. Western Pioneer filed its declinatory exception pleading lack of jurisdiction over the person on January 15, 1980. The portion of the Hall deposition filed in the record shows that counsel for Western Pioneer took Hall on cross-examination and asked her when was the last time she saw her doctor in Baton Rouge, if she planned to see him in the future, when did she come to Baton Rouge on this trip, if she was drawing retirement benefits from her former employer located in San Francisco, California, when she was born, where she was born, and when did she visit her daughter in Louisiana. He then secured from her the fact that she purchased her Western Pioneer policy for the car she owned in California, that the policy was originally obtained by her deceased husband from a California insurance agent in California, that she renewed the policy each year after her husband passed away, that she was living in California at the time that the policy was first issued, that each renewal of the policy was sent to her in California through the same agent, and that she turned over her medical bills to Western Pioneer.
Under the provisions of Article 7 of the Code of Civil Procedure, and except as otherwise provided in that article, a person makes a general appearance and subjects himself to the jurisdiction of the court and impliedly waives all objections to the jurisdiction of the court if he seeks relief in the case.[4] It has been held that although *231 not specifically listed as an exception in Article 7, that answering written interrogatories does not qualify as seeking relief "in order to subject a person to the jurisdiction of the court." Vincent v. Penrod Drilling Company, 372 So.2d 807 (La.App. 3rd Cir. 1979). In the case of Stelly v. Quick Manufacturing, Inc., 228 So.2d 548 (La.App. 3rd Cir. 1969), it was held that if a person filed a notice to take an oral deposition of another party in the case, that this constituted a general appearance and a request for relief and waived objection to the jurisdiction of the court. The Stelly case is not applicable to the facts of this case because the deposition was noticed by Geraldine Bell and USF&G. In Moore v. Central Louisiana Electric Company, 257 So.2d 702 (La.App. 3rd Cir. 1972), reversed on other grounds, 273 So.2d 284 (La.1973), it was specifically held that a non-resident does not waive objection to the jurisdiction of the court and make a general appearance by noticing the taking a deposition for the limited purpose of securing answers to relevant questions concerning an exception of jurisdiction. In the instant case, Western Pioneer did not notice the deposition, but merely appeared at it. The questions by Western Pioneer's counsel which did not pertain to the exception of jurisdiction were innocuous and of no great consequence. The bulk of the cross-examination by counsel for Western Pioneer dealt with issues concerning the manner in which the Western Pioneer policy was obtained in California and thus were pertinent to the jurisdiction exception. Under these particular facts and circumstances, it is our opinion that by appearing at the deposition, Western Pioneer was not seeking relief as contemplated by Article 7 of the Code of Civil Procedure and, thus, did not make a general appearance and waive its right to object to the jurisdiction of the court.
For the reasons herein assigned, the judgment of the trial court overruling the declinatory exception pleading lack of personal jurisdiction is reversed and judgment will be rendered herein in favor of the Western Pioneer Insurance Company and against Elnora Hall sustaining the exception and dismissing her petition with prejudice. Elnora Hall is cast for all costs of this appeal.
REVERSED AND RENDERED.
NOTES
[1] La.R.S. 13:3474 provides:

"The acceptance by non-residents of the rights and privileges conferred by existing laws to operate motor vehicles on the public highways of the state of Louisiana, or the operation by a non-resident or his authorized agent, employee or person for whom he is legally responsible of a motor vehicle within the state of Louisiana, shall be deemed equivalent to an appointment by such non-resident of the secretary of state of Louisiana or his successor in office, to be his true and lawful attorney for service of process, as well as the attorney for service of process of the public liability and property damage insurer of the vehicle, if such insurer be a non-resident not authorized to do business in the state, upon whom or such insurer, may be served all lawful process in any action or proceeding against the non-resident, or such insurer, growing out of any accident or collision in which the non-resident may be involved while operating a motor vehicle in this state, or while same is operated by his authorized agent or employee. In the event of the death of such non-resident before service of process upon him, any action or proceeding growing out of such accident or collision may be instituted against the executors or administrators of such deceased non-resident, if there be such, and if not, then against his heirs or legatees, and service may be made upon them as provided in R.S. 13:3475. Process against the defendant or defendants, the non-resident, his executors or administrators, if there be such, and if not, then against his heirs or legatees, or the liability insurer of such vehicle, as the case may be, shall be of the same legal force and validity as if served upon such defendant personally."
[2] Louisiana does not allow punitive damages. La.C.C. art. 1934; Ricard v. State, 390 So.2d 882 (La.1980).
[3] La.R.S. 22:1253(A) provides:

"The transacting of business in this state by a foreign or alien insurer without a certificate of authority is equivalent to an appointment by such insurer of the Secretary of State and his successor or successors in office to be its true and lawful attorney, upon whom may be served all lawful process in any action, suit or proceeding maintained by the commissioner of insurance or arising out of such policy or contract of insurance, and the said transacting of business by such insurer is a signification of its agreement that any such service of process is of the same legal force and validity as personal service of process in this state upon it."
[4] La.C.C.P. art. 7 provides:

"Except as otherwise provided in this article, a party makes a general appearance which subjects him to the jurisdiction of the court and impliedly waives all objections thereto when, either personally or through counsel, he seeks therein any relief other than:
(1) Entry or removal of the name of an attorney as counsel of record;
(2) Extension of time within which to plead;
(3) Security for costs;
(4) Dissolution of an attachment issued on the ground of the non-residence of the defendant; or
(5) Dismissal of the action on the ground that the court has no jurisdiction over the defendant.
"This article does not apply to an incompetent defendant who attempts to appear personally, or to an absent or incompetent defendant who appears through the attorney at law appointed by the court to represent him.
"When a defendant files a declinatory exception which includes a prayer for the dismissal of the action on the ground that the court has no jurisdiction over him, the pleading of other objections therein, the filing of the dilatory exception therewith, or the filing of the peremptory exception or an answer therewith when required by law, does not constitute a general appearance."