734 F.2d 168
 Scott Richard AUGUST and Sharon Irene August, Appellants,
and
William C. Parkinson, Jr., Trustee, Plaintiff,
v.
HBA LIFE INSURANCE COMPANY, Appellee.
In re Scott Richard AUGUST and Sharon Irene August, Debtors.
 No. 82-1532.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 10, 1983.
Decided May 10, 1984.
 
 Robert H. Brumley, III, Aylett, Va., for appellants.
 John M. Gray, Fairfax, Va. (Fred W. Palmore, III and J. Maurice Miller, Jr., Richmond, Va., on brief), for appellee.
 Before WIDENER and HALL, Circuit Judges, and FAIRCHILD,* Senior Circuit Judge.
 FAIRCHILD, Senior Circuit Judge.
 
 
 1
 On July 31, 1981, Scott and Sharon August petitioned the United States Bankruptcy Court for relief under Chapter 13 of Title 11 of the United States Code. The Augusts' plan proposed as its principal funding money due the Augusts under a default judgment a Virginia state court had rendered against HBA. HBA, an Arizona insurance company not authorized to do business in Virginia, had no representative in Virginia and had not appeared in the state court action. It had been served with process under Virginia's long arm statute, Sec. 8.01-328.1, Code of Virginia.
 
 
 2
 On November 26, 1981, the Augusts filed with the Bankruptcy Court a complaint for turnover of property, praying that the court order HBA to pay the sum due under the default judgment.
 
 
 3
 Dismissing the Augusts' complaint, the Bankruptcy Court ruled that HBA lacked sufficient contacts with Virginia to satisfy due process requirements for the assertion of jurisdiction over it and that the state court default judgment is void. August v. HBA Life Insurance Co. (In re August), 17 B.R. 628 (Bkrtcy.E.D.Va.1982). The District Court affirmed. The Augusts appeal.
 
 
 4
 The sole question argued by the parties is whether the state court could exercise in personam jurisdiction over HBA.
 
 
 5
 On August 10, 1977, in Arizona, Scott August, then an Arizona resident, obtained a hospitalization-surgical care insurance policy from HBA. August's wife and children were also insured.
 
 
 6
 The policy called for a monthly premium of $55.00 and was renewable monthly for life subject to the company's right to adjust premium rates. The policy provided, in part:
 
 
 7
 Each monthly term shall begin and end at 12:01 A.M. Standard Time at the residence of the Insured.... On each premium due date, the Company has the right to change the premium for this policy. However, a change in premium shall not be made unless the changed premium rates apply to all policies of the same rating class, policy duration and policy form as this policy issued to persons residing in the state of the Policyowner's then residence.
 
 
 8
 In September, 1977, the Augusts moved to, and became residents of Virginia. Between September, 1977, and February 15, 1978, August paid regular monthly premiums. He paid four of the premiums by checks drawn on the Augusts' account at the Bank of Virginia in Grafton, Virginia. HBA negotiated the four checks drawn on the Virginia bank. No change was made in the premium.
 
 
 9
 On December 17, 1977, the Augusts made a claim under the policy for medical expenses Mrs. August incurred at a hospital in Virginia. HBA denied the claim. The letter of denial stated that the policy provided benefits for illness which began after 30 days after the effective date and that the condition causing Mrs. August's hospitalization originated prior to the policy's being in force 30 days.
 
 
 10
 The letter also said that Mrs. August had an extensive history which the application did not reveal and therefore HBA enclosed an elimination endorsement which would apply to her coverage. The rider provided that:
 
 
 11
 in addition to the exceptions, reductions and limitation contained in the policy ... no payment shall be made under the policy for loss ... which results directly or indirectly from.... Any disease of the organs peculiar to females, [s]uffered by Sharon August.
 
 
 12
 HBA requested that Mr. August sign the rider to "eliminate any confusion on any future claims presented under the policy."
 
 I. THE VIRGINIA LONG ARM STATUTE
 The district court correctly observed that
 
 13
 An inquiry into the validity of an assertion of in personam jurisdiction over a non-resident defendant is two-fold. Jurisdiction is proper only if (1) a state statute provides authority for the assertion of jurisdiction, and (2) the assertion of jurisdiction under the particular facts does not offend the due process clause of the Fourteenth Amendment to the United States Constitution.
 
 
 14
 Virginia's Long Arm Statute provides in part:
 
 
 15
 Sec. 8.01-328.1 A. A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's:
 
 
 16
 1. Transacting any business in this Commonwealth;
 
 
 17
 * * *
 
 
 18
 7. Contracting to insure any person, property, or risk located within this Commonwealth at the time of contracting....
 
 
 19
 Unless HBA's receipt of premiums after the Augusts took up residence in Virginia can be deemed the making of a contract to insure, paragraph 7 above would be inapplicable if strictly construed. Even if paragraph 7 were strictly construed, there would remain the question whether paragraph 1 would apply to the facts of this case.
 
 
 20
 Virginia has described its long-arm statute, Va.Code Sec. 8.01-328.1, as asserting in personam jurisdiction to the full extent permitted by due process. Danville Plywood Corp. v. Plain & Fancy Kitchens, Inc., 218 Va. 533, 238 S.E.2d 800, 802 (1977); John J. Kolbe, Inc. v. Chromodern Chair Co., 211 Va. 736, 740, 180 S.E.2d 664, 667 (1971); Carmichael v. Snyder, 209 Va. 451, 456, 164 S.E.2d 703, 707 (1968). See Brown v. American Broadcasting Co., 704 F.2d 1296, 1301 (4th Cir.1983); Peanut Corp. of America v. Hollywood Brands, Inc., 696 F.2d 311, 313 (4th Cir.1982); Ajax Realty Corp. v. J.F. Zook, Inc., 493 F.2d 818, 822 (4th Cir.1972), cert. denied sub nom. Durell Products, Inc. v. Ajax Realty Corp., 411 U.S. 966, 93 S.Ct. 2148, 36 L.Ed.2d 687 (1973).
 
 
 21
 Accordingly, we conclude that paragraph 7 is not to be strictly construed and treated as the exclusive provision for long-arm jurisdiction whenever a cause of action on an insurance contract is involved.
 
 
 22
 HBA appears to take issue with the proposition that the Virginia long arm statute reaches every situation where assertion of jurisdiction does not deprive the foreign insurer of due process. It argues that other provisions of Virginia statutes demonstrate Virginia legislative intent that jurisdiction is not to be exercised over unlicensed foreign insurance companies issuing insurance contracts to non-residents of Virginia. Section 38.1-64 lists various acts by a foreign insurer which shall constitute its appointment of the clerk of the State Corporation Commission as its agent for the service of process. The first acts listed are "the issuance or delivery of contracts of insurance to residents of this State." Subsequent listings of other acts, including collection of premiums and solicitation of applications, refer to "such contracts." Because the phrases "the issuance or delivery" and "to residents of this State" in the first listing do not modify "contracts," the later references to "such contracts" do not incorporate those phrases as limitations upon the subsequently listed acts. Furthermore, Sec. 38.1-67 specifically disclaims any limiting effect on "the right to serve ... process ... upon any insurance company" which might be read into Sec. 38.1-64.
 
 
 23
 Section 38.1-339 prohibits, in an insurance contract "delivered or issued for delivery in this State," a provision depriving Virginia courts of jurisdiction of actions against the insurer.
 
 
 24
 Section 38.1-98.1 authorizes an injunction against doing of any insurance business in Virginia by an unlicensed foreign insurance company. For the purposes of that section the transacting of insurance business consists of the same acts listed in Sec. 38.1-64. It is provided that the section shall not apply to "transactions in this State involving a policy lawfully solicited, written and delivered outside of this State covering only subjects of insurance not resident, located, or to be performed in this State at the time of issuance of such policy."
 
 
 25
 The purposes of these statutes are different from that of the long arm statute. We are not persuaded that the provisions of these statutes require the conclusion that paragraph 7 of the long arm statute, strictly construed, is exclusive notwithstanding the doctrine that the long arm statute was intended to support jurisdiction wherever the requirements of due process are not offended.
 
 
 26
 Accordingly, the critical issue is whether due process requirements were met.
 
 II. COMPLIANCE WITH DUE PROCESS
 
 27
 The fundamental principle is that "in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). In addition "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws...." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). Apparently the requirement of purposefulness is met where a defendant "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 298, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).
 
 
 28
 HBA's contacts with Virginia are as follows: The owner of its policy, issued to him in Arizona when an Arizona resident, came to reside in Virginia. The members of his family covered by the policy came with him. The events insured against are likely, as a result of the move, to occur in Virginia. Premiums are remitted by mail from Virginia to HBA in Arizona. A loss has allegedly occurred in Virginia, and a claim has been asserted by mail from Virginia. In a letter of denial mailed from Arizona to Virginia, HBA solicited an agreement which would have reduced the coverage afforded by the policy.
 
 
 29
 In McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), the Supreme Court held that California courts could constitutionally exercise jurisdiction over a Texas insurance company that agreed to assume the obligation of an Arizona insurer and then mailed a reinsurance certificate to a California resident offering to insure him in accordance with the terms of a policy he held with the Arizona insurer. The insured was a California resident when he purchased the policy from the Arizona insurer as well as when he accepted the Texas insurer's offer and mailed premiums from California to Texas.
 
 
 30
 Absent, however, from the list of HBA's contacts is the negotiation or formation of the insurance contract sued upon while August was a resident of Virginia (or even with knowledge that August was about to move to Virginia). We consider this a significant difference from McGee.
 
 
 31
 It is true that HBA's acceptance of the premiums effected a renewal for succeeding monthly terms, but the original Arizona contract gave August the right to renewal. HBA had no choice but to accept. It could, under the contract, have changed the premium, but plaintiff has not argued that the existence of this option made each renewal a new contract. Except for some such theory, HBA's acceptance of premiums could not fulfill the requirement of purposefulness.
 
 
 32
 HBA was in the business of selling insurance against events which might well occur outside Arizona as its insured moved about. Insurance by its nature involves the assertion of claims, and resort to litigation is often necessary. As pointed out in McGee, the burden of bringing an action in a foreign forum may make insurance valueless, particularly as to small or moderate claims. 355 U.S. at 223, 78 S.Ct. at 201. Here the insurance contract contains language, previously quoted, which indicates that HBA foresaw the possibility that its policyowners might come to reside in states other than the state where they resided when the policy was written. There are decisions indicating that an automobile liability insurer subjects itself to an injured person's suit on the policy in any state where the automobile caused injury. Pugh v. Oklahoma Farm Bureau Mutual Insurance Co., 159 F.Supp. 155 (E.D.La.1958). See Bevins v. Comet Casualty Co., 71 Ill.App.3d 758, 28 Ill.Dec. 333, 390 N.E.2d 500 (1979); Labruzzo v. State-Wide Insurance Co., 77 Misc.2d 455, 353 N.Y.S.2d 98 (Sup.Ct. Queens Co. 1974); Jarstad v. National Farmers Union Property & Casualty Co., 92 Nev. 380, 552 P.2d 49, 53-54 (1976).
 
 
 33
 The Supreme Court requires more, however, than foreseeability. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 295-97, 100 S.Ct. 566-67 (1980).
 
 
 34
 [T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum state. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.
 
 
 35
 444 U.S. at 297, 100 S.Ct. at 567. Although it is foreseeable that readily movable products sold by a defendant in one state will be taken into a second one, that is not a sufficient contact with the second state unless defendant delivered the product "into the stream of commerce with the expectation that they will be purchased by consumers in the forum state." 444 U.S. at 298, 100 S.Ct. at 567. We conclude that the fact that defendant has insured against the expense of health care for individuals who reside in Arizona but may well move into a different state does not create a sufficient contact between defendant and any state into which they may move.
 
 
 36
 In dealing with Mr. August concerning his claim for hospital expenses for Mrs. August, HBA mailed a request that Mr. August sign a rider which would reduce the coverage of the policy. We have no doubt that if August had signed and returned the rider, and sued in Virginia on a later claim, McGee would have supported in personam jurisdiction over HBA. Although the rider was not signed, and the cause of action did not arise out of the solicitation, the solicitation of the rider and the cause of action sued upon were very closely related.
 
 
 37
 The District Court concluded that the solicitation could not provide the basis for personal jurisdiction. Its view was that the "rider would not change the policy but would only confirm the provision of the previously executed policy that claims relating to a pre-existing disorder of the female organs are not covered."
 
 
 38
 We think the District Court erred in its analysis. The original policy covered loss resulting from
 
 
 39
 disorders of organs peculiar to females [but] only if such expense is incurred after this policy has been in force as to the person whose illness is the basis of claim for ten (10) months preceding the date such expense is incurred, and such ... disorders to organs peculiar to females originates thirty (30) days after the date coverage hereunder is effective....
 
 
 40
 The rider, however, previously quoted, would entirely exclude coverage for this type of disease if suffered by Mrs. August.
 
 
 41
 The proposed rider would thus significantly broaden the exclusion in the original policy.
 
 
 42
 Under the circumstances, including August and his family having become residents of Virginia and August's continuation of the policy in force by payment of premiums, we think that HBA's solicitation of the execution of the rider, mailed to Mr. August in Virginia, was a sufficient predicate for exercise of long arm jurisdiction over HBA, resulting in the state court judgment.
 
 
 43
 Accordingly, the judgment appealed from is reversed and the cause remanded for proceedings consistent with this opinion.
 
 K.K. HALL, Circuit Judge, dissenting:
 
 44
 I cannot agree with the majority's conclusion that the requisite due-process requirements have been met to subject HBA to in personam jurisdiction. As the majority recognizes, the only possible contact between HBA and Virginia is the "elimination rider" which was mailed by the insurance company to the Augusts' Virginia residence and to which the Augusts never responded. I agree with the bankruptcy judge that this contact was insufficient to trigger Virginia's Long-Arm statute and I, therefore, dissent.
 
 
 45
 Although Sharon August filed her claim for medical expenses after the Augusts had established residency in Virginia, there is no evidence in the record tying HBA with any transactions in that state. HBA is an Arizona corporation with its principal place of business and place of incorporation in the State of Arizona. No evidence was presented indicating that HBA had ever sold an insurance policy to a resident of Virginia or had ever solicited any business within Virginia. Furthermore, the "elimination rider" HBA sent to the Augusts was not designed to change the Augusts' policy, but simply to underscore that provision of the policy which disclaimed coverage for claims arising from previously undisclosed medical problems.[1]
 
 
 46
 To meet the minimum contacts test enunciated in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), HBA must have engaged in an act by which it "purposefully avail[ed] itself of the privilege of conducting activities within [Virginia], thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). HBA engaged in no such act in this case. HBA has no office in Virginia and does not solicit or transact any business there. Nor can HBA's attempt to obtain Scott August's signature on the elimination rider provide the basis for personal jurisdiction. The elimination rider and the letter accompanying it were not received by the Augusts until after the events giving rise to the Augusts' claims and, therefore, cannot be considered as contacts for the purpose of establishing jurisdiction over the claim. Moreover, the rider was never signed and, consequently, cannot be regarded as the basis of a business transaction between the parties.[2] It is in this latter respect that the instant case differs from McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). In McGee, the non-resident defendant solicited a reinsurance agreement with a resident of the forum state. The offer was accepted in that state and the Supreme Court upheld jurisdiction because the suit "was based on a contract which had substantial connection with that State." Id. at 223, 78 S.Ct. at 201. In contrast, the cause of action in this case is not one that arises out of an act taken or a transaction consummated in the forum state.
 
 
 47
 Because HBA lacked the type of contacts with Virginia necessary to satisfy the requirements of due process, the judgment entered against HBA in the Circuit Court of King and Queen County, Virginia, is, at least in my mind, void for lack of personal jurisdiction, and the Augusts' complaint for turnover of property should be dismissed. Accordingly, I would affirm the district court.
 
 
 
 *
 Honorable Thomas E. Fairchild, Senior Circuit Judge of the Seventh Circuit Court of Appeals, sitting by designation
 
 
 [1]
 The majority construes the rider as expanding the original contract. To the contrary, the letter explaining the decision to deny coverage emphasizes that the purpose of the rider is to preclude future misrepresentations about disorders which existed prior to the time the policy took effect
 
 
 [2]
 The majority views the rider as a solicitation designed to alter the terms of the original insurance policy. Yet, even if this were the case, there would be no grounds for reversal because the rider was never signed, and the Supreme Court has stated on several occasions that solicitation alone cannot subject a foreign corporation to local jurisdiction. Green v. Chicago, Burlington, & Quincy Ry. Co., 205 U.S. 530, 533-34, 27 S.Ct. 595, 596, 51 L.Ed. 916 (1907); Philadelphia and Reading Ry. Co., v. McKibbin, 243 U.S. 264, 267-68, 37 S.Ct. 280, 281, 61 L.Ed. 710 (1917). See also Long v. Victor Products Corp., 297 F.2d 577, 581 (8th Cir.1961) ("[I]t is still the law that 'mere solicitation' within a state does not of itself render the foreign corporation vendor amenable to suit within the state"). Cf. Danis v. Ziff-Davis Publishing Co., 138 Ariz. 346, 674 P.2d 900 (1983) (mailing of letter to party in foreign state is not a sufficient act to satisfy the requirement of minimum contacts under the due process clause)