**BASSETT FURNITURE INDUSTRIES, INC., Plaintiff,**

v.

**James S. SEXTON and Reps West Sales, Inc., Defendants.**

Civ. A. No. 83–0172–D.

United States District Court,
W.D. Virginia,
Danville Division.

Nov. 8, 1984.

L. Dale McGhee, Philpott & McGhee, Bassett, Va., for plaintiff.

Harry S. Rhodes, Bersch & Rhodes, Roanoke, Va., James O. Devereaux, Law Offices of Ronald M. Abend, Inc., Oakland, Cal., for defendants.

MEMORANDUM OPINION

KISER, District Judge.

This diversity action was brought to recover payments allegedly due on the sale of furniture. Jurisdiction over the Defendant

was asserted pursuant to Va.Code § 8.01–328.1(A)1(1950), which the Defendant asserts is improper. This matter is ripe for disposition.

Plaintiff Bassett Furniture Industries, Inc. (hereinafter "Bassett") is a Virginia corporation engaged in the manufacture of furniture. The Weiman Company (hereinafter "Weiman"), who is directly involved in this action, is not an independent company but is a division of Bassett. Reps West Sales, Inc. (hereinafter "RWS") is a small, closely held Californian corporation engaged in the sale and display of furniture. Mr. James Sexton, also a Defendant in this action, is a shareholder and director of RWS and serves as the corporation's Vice President.

The evidence presented to this Court indicates that sometime in the Fall of 1980 Mr. Dick Shaw and Mr. Dan Farr, acting as Weiman representatives, entered into a business relationship with Mr. James Sexton and RWS whereby RWS agreed to act as Weiman's representative in the states of California, Oregon and Washington. Although the initial contact between the parties occurred at a furniture show in High Point, North Carolina, and the confirmation of the agreement was by a call to High Point, the majority of the performance was to occur on the West Coast, and the goods, which were to be displayed and sold, were to be manufactured in Virginia. This agency relationship continued for approximately three years when it was terminated around November, 1983.

There is little dispute that RWS's activity associated with this relationship fits into one of four categories: (1) showroom display of furniture; (2) contacts with dealers; (3) contacts with independent designers; (4) and control over rejected goods. A more detailed examination of these individual activities is required in order to fully understand the relationship.

The merchandise to be displayed in the RWS showroom was selected by Mr. Sexton at the semi-annual furniture show in High Point, North Carolina and shipped to the showroom in California. Title, however, to the goods remained in Weiman. Payment would only be due once the furniture was sold. Normally, there would be some type of telephone communication with Weiman prior to sale. Payment would be by RWS' check mailed to Virginia. RWS also solicited orders from dealers on the West Coast for Weiman furniture. After the initial solicitation, the orders would usually be placed by the dealer on their own forms to Weiman and the furniture would be shipped directly to the dealers. RWS would then receive a commission on the sale. The evidence also indicates that RWS would occasionally place orders for independent designers. The designer would specify their preference, and RWS would place the order on its own forms. Payment for this furniture would be made by a RWS check mailed to Weiman in Virginia. As a final part of the relationship, RWS would take possession of Weiman goods which were shipped to the West Coast and rejected by the purchasers. RWS would communicate by telephone with Weiman to determine what to do with the rejected goods. Although the present action involves a dispute as to amounts due as a result of the alleged disposal of showroom samples and rejected goods, the evidence establishes that the business relationship between the parties was essentially that of an agency relationship and that there were several facets to the services offered by RWS as the manufacturer's representative.

The central issue in this case is whether the Court has personal jurisdiction over the Defendants such that they can be hailed into a court in Virginia to answer for these claims. Normally, the question of *in personam* jurisdiction would require a two step analysis. *Peanut Corporation of America v. Hollywood Brands, Inc.*, 696 F.2d 311, 313 (4th Cir.1982). First, an inquiry would have to be made into whether the activity falls within the state's long-arm statute. Should this be the case, the assertion of jurisdiction would have to comport with the Due Process Clause of the United States Constitution. The Virginia

long-arm statute (Va.Code § 8.01–328.1), however, has been construed to extend *in personam* jurisdiction to the full extent permitted by due process. *Danville Plywood Corp. v. Plain and Fancy Kitchens, Inc.*, 218 Va. 533, 238 S.E.2d 800, 802 (1977); *John J. Kolbe, Inc. v. Chromodern Chair Co.*, 211 Va. 736, 740, 180 S.E.2d 664, 667 (1971); *August v. HBA Life Insurance Company*, 734 F.2d 168, 171 (4th Cir.1984); *Brown v. American Broadcasting Co.*, 704 F.2d 1296, 1301 (4th Cir.1983). More specifically, the scope of the "transacting business" requirement of § 8.01–328.1(A)1, Va.Code 1950 has been construed to be limited only by the parameters of due process. *Medeco Security Locks, Inc. v. Fichet-Baushe*, 568 F.Supp. 405 (W.D.Va.1983). Given this interpretation, the only real issue is whether the Defendants' activities satisfy the requirements of due process, therefore, I will dispense with the traditional two step analysis and examine the due process issue.

■ The cornerstone of *in personam* jurisdiction over a non-resident defendant is that he have certain minimum contacts with the forum such that the "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The Supreme Court focused on the quality and nature of the activity to determine whether it was "reasonable and fair" to require a defense in the forum state. *Id.* 326 U.S. at 317, 66 S.Ct. at 158. As the Supreme Court has noted in subsequent opinions, this reasonableness standard precludes a mechanical application of the minimum contacts test and requires that the facts and circumstances of each case be considered and weighed to determine whether the requisite contacts are present. *Kulko v. California Superior Court*, 436 U.S. 84, 92, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978); *Hanson v. Denckla*, 357 U.S. 235, 246, 78 S.Ct. 1228, 1235, 2 L.Ed.2d 1283 (1958). "[T]his determination [minimum contacts] is one in which few answers will be written in black and white. The grays are dominant and even among them the shades are innumerable." *Kulko*, 436 U.S. at 92, 98 S.Ct. at 1697. Notwithstanding this fact, the crucial factor in every case is that "there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." *Hanson*, 357 U.S. at 253, 78 S.Ct. at 1240.

In order to determine whether the assertion of jurisdiction over this party is fair and just, we must undertake to examine their contacts and relationship in its entirety to determine whether, through their activities, there was a purposeful availment of the protections of the laws of the Commonwealth.

Although this is an action for the payment of goods, the relationship between the parties was significantly more involved than that of a normal purchaser-seller. The parties here were engaged in a continuing business relationship whereby the Defendants acted as the Plaintiff's representative on the West Coast for three years. RWS displayed, promoted, and sold Weiman's products which were manufactured in Virginia. RWS solicited orders for Weiman products to be sold on the West Coast and also placed orders on their own forms for independent designers which were mailed to Virginia. The goods were paid for by RWS' checks and mailed to Weiman in Virginia. In addition to the numerous orders placed through the mail, the parties also communicated frequently by the telephone regarding the disposal of showroom merchandise and rejected goods. The Defendants agreed by contract to assume the responsibility of representing the Plaintiff on the West Coast and did fulfill these contractual duties for three years. This was not a single, isolated contract for the purchase of goods but rather a continuing business transaction whereby the Defendants provided their services to the Plaintiff over a period of three years.

I find this present action factually similar to *I.T. Sales, Inc. v. Felix L. Dry*, 222

Va. 6, 278 S.E.2d 789 (1981). In *I.T. Sales,* the plaintiff was a Virginia corporation that acted as a manufacturer's representative. The defendant entered into an employment contract with the plaintiff to promote the merchandise on the West Coast. This agreement, which was made in Virginia, required the defendant to move to California, and substantially all the contractual terms were to be performed on the West Coast. The Court found that there were sufficient contacts to assert personal jurisdiction over the Defendant so as not to offend traditional notions of fair play and justice. Although the actual agreement in this action was negotiated and finally approved in High Point, North Carolina, I do not believe that to be dispositive. RWS agreed to represent a Virginia corporation and promote, display, order, and purchase good manufactured in Virginia. The parties communicated frequently between California and Virginia via the telephone and mail, and most importantly this series of transactions lasted for over a period of three years. The mere fact that this agreement by chance was finalized in North Carolina is not persuasive.

Another case which I find helpful is *John G. Kolbe, Inc. v. Chromodern Chair Co.,* 211 Va. 736, 180 S.E.2d 664 (1971) where jurisdiction over a non-resident defendant was upheld when an agent for the defendant approached the plaintiff in Virginia and requested a purchase order be mailed to the defendant's out-of-state offices. The plaintiff mailed the purchase order and paid for the goods. If the solicitation of a single purchase order while in the boundaries of Virginia is sufficient to sustain assertion of personal jurisdiction, I am of the opinion that the mailing of purchase orders to Virginia over a three year period would also sustain *in personam* jurisdiction. I do not find the lack of physical presence to be problematic. The consequences and ramifications of the contacts are the same regardless of whether made in person or by mail. In fact, I believe that a series of purchase orders and calls over a period of three years is even more a "purposeful availment of the benefits and pro-

tections of the laws" of Virginia than a single purchase order made within the Commonwealth.

I find the Fourth Circuit's recent opinion in *August v. HBA Life Ins. Co.,* 734 F.2d 168 (4th Cir.1984) of assistance in addressing this question. In *August,* the plaintiffs purchased an insurance contract from the defendants while a resident of Arizona. The plaintiffs later moved to Virginia and continued to remit premiums by mail to the defendants. While the plaintiffs were in Virginia, the defendants mailed to the plaintiffs a rider to the policy which would have expanded the terms of the contract. The rider was not executed. The Fourth Circuit held that "HBA's solicitation of the execution of the rider, mailed to Mr. August in Virginia, was a sufficient predicate for exercise of long-arm jurisdiction over HBA, resulting in the state court judgment." *Id.* at 173. Analogizing this interpretation to the present case, each purchase order and telephone call made to Virginia in effect expanded and reaffirmed that original contract of representation finalized in North Carolina.

■ Considering the facts and circumstances of this relationship in its entirety, it is my opinion that there are sufficient minimum contacts with the forum state so as to sustain the assertion of *in personam* jurisdiction without offending traditional notions of due process. No single activity standing alone would be sufficient, however, the nature and duration of this relationship along with the individual acts taken as a whole are such that RWS should have reasonably anticipated being brought before a Virginia court. *Worldwide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). I find due process satisfied and *in personam* jurisdiction over these Defendants proper.

The Clerk is directed to send certified copies of this Memorandum Opinion to all counsel of record.