**SUPERFOS INVESTMENTS LIMITED,**
t/a Superfos Trading, Inc.,
Plaintiff,

v.

**FIRSTMISS FERTILIZER,**
**INC., Defendant.**

Civ. A. No. J91–0568(L).

United States District Court,
S.D. Mississippi,
Jackson Division.

July 2, 1992.

Thomas W. Tardy III, Alexander Alston, Thomas, Price, Alston, Jones & Davis, Jackson, MS, for plaintiff.

Alan Walter Perry, Forman, Perry, Watkins & Krutz, Jackson, MS, for defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendant FirstMiss Fertilizer, Inc. (FirstMiss) to dismiss or, in the alternative, for partial summary judgment. Plaintiff Superfos Investments Limited t/a Superfos Trading, Inc. (Superfos) has responded to the motion and the court, having considered the memoranda of authorities, together with attachments submitted by the parties, is of the opinion that defendant's motion should be denied.

The present case involves an agreement for the sale and purchase of anhydrous ammonia, a liquid fertilizer, which was executed between defendant FirstMiss as buyer and plaintiff Superfos as seller. Under the terms of the parties' agreement, First-Miss was required to purchase a minimum of 80,000 tons of anhydrous ammonia in each year of the contract, which was to terminate on December 31, 1990. The agreement contained a "take or pay" provision, pursuant to which FirstMiss, even if it did not take delivery of the agreed minimum quantity of the product, was required to pay Superfos as though the minimum quantity had been delivered. Superfos instituted the present action on May 13, 1991 in the United States District Court for the Eastern District of Virginia, contending that FirstMiss breached the contract by failing to take delivery of the requisite minimum amounts of anhydrous ammonia dictated by the parties' contract, having taken only 62,856 tons of the product in 1989, and only 78,588 tons in 1990. Superfos sought damages from FirstMiss in the amount of $1,478,670 for the 1989 shortfall and $163,438 for the 1990 shortfall. Upon motion of FirstMiss to dismiss Superfos' complaint in the court for lack of personal jurisdiction, the Virginia District Court concluded that FirstMiss was not amenable to *in personam* jurisdiction in that state, since it lacked the requisite minimum contacts with Virginia. *Superfos Investments, Ltd. v. FirstMiss Fertilizer, Inc.*, 774 F.Supp. 393 (1991). However, rather than dismiss the complaint, the court transferred the action to this court by order dated September 26, 1991.

In its motion before this court, FirstMiss asserts that since Superfos did not commence this action until May 1991, a one-year limitations period agreed upon by the parties and included in the parties' contract operates to bar Superfos' claim relative to the alleged 1989 shortfall, and that its claim for damages for that shortfall must therefore be dismissed. Superfos counters that the limitations period included in the parties' contract is unenforceable, since Mississippi law—which it contends applies in this action—does not permit parties to contractually shorten statutorily prescribed limitations periods. Superfos further maintains that even if Mississippi substantive law does not otherwise apply to the subject contract, Mississippi's proscription against

contractually reducing a limitations period represents a significant public policy of Mississippi which must be given effect, regardless of what state's laws would otherwise apply. Finally, Superfos urges that the limitations provision included in the agreement under consideration is in all events by its plain terms inapplicable to the claim which Superfos asserts in this action, or alternatively that the language of the agreement is at least ambiguous on the question whether the contractual limitations period applies to the current controversy.

■ This court, sitting in a diversity case, is bound to apply the law of the forum state, including the state's choice of law rules. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Mississippi's version of the Uniform Commercial Code allows the parties to a contract to choose the substantive law that will govern their relationship, so long as the state whose law is chosen bears a reasonable relation to the contract. Miss.Code Ann. § 75–1–105 (1972).[1] *See also Woods–Tucker Leasing Corp. v. Hutcheson–Ingram Dev. Co.*, 642 F.2d 744 (5th Cir.1981); *FMC Finance Corp. v. Murphree*, 632 F.2d 413, 318 (5th Cir.1980). The agreement executed by the parties in the case *sub judice* includes such a provision, providing that the contract is to "be governed in all respects, including but not limited to interpretation and performance,

by the laws of the Commonwealth of Virginia." Virginia law, and in particular, that state's version of the Uniform Commercial Code, permits parties to agree to a shorter period of limitations in their contract, provided the period agreed upon is not less than one year. Va.Code § 8.2–725.[2] This is contrasted with Mississippi law, which prohibits parties from contractually shortening a limitations period, Miss.Code Ann. § 15–1–5 (1972).[3] In view of this conflict between the laws of the two states, this court is called upon first to determine whether Mississippi would give effect to the parties' contractual choice of law. The question, then, is whether Virginia bears a reasonable relation to the transaction at issue.

■ Superfos argues that the finding of the Virginia District Court in ruling on FirstMiss' motion to dismiss that "all of the facts surrounding the formation and performance of the contract indicate that it was not substantially related to Virginia," *Superfos v. FirstMiss*, 774 F.Supp. at 399, precludes a conclusion by this court that Virginia has a reasonable relation to the contract. Thus, according to Superfos, the parties' contractual choice of law is invalid and of no effect. In the court's view, however, Superfos' position fails to recognize the distinction between the nature and quality of contacts which are necessary to support an exercise of personal jurisdiction

**1.** Miss.Code Ann. § 75–1–105 provides as follows:

Except as provided hereafter in this section, when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties. Failing such agreement, this code applies to transactions bearing an appropriate relation to this state. Provided, however, the law of the State of Mississippi shall always govern the rights and duties of the parties in regard to rights and duties of the parties in regard to disclaimers of implied warranties of merchantability or fitness, limitations of remedies for breaches of implied warranties of merchantability or fitness, or the necessity for privity of contract to maintain a civil action for breach of implied warranties of merchantability or fitness notwithstanding any agreement by the parties that the laws of some

other state or nation shall govern the rights and duties of the parties.

**2.** Va.Code § 8.2–725 provides:

(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

**3.** Miss.Code Ann. § 15–1–5 provides:

The limitations period prescribed in this chapter shall not be changed in any way whatsoever by contract between parties, and any change in such limitations made by any contracts stipulation whatsoever shall be absolutely null and void, the object of this section being to make the period of limitations for the various causes of action the same for all litigants.

and those which will support a finding that a transaction bears a mere "reasonable relation" to a particular state. As the Virginia District Court observed in its opinion finding that it lacked jurisdiction over FirstMiss, " '[d]ue process requires that there be more than a simple connection between the contract which is being sued upon and the state asserting jurisdiction.' " *Superfos*, at 398 (quoting *In re August*, 17 B.R. 628, 630 (E.D.Va.1982), *rev'd on other grounds sub nom. August v. HBA Life Ins. Co.*, 734 F.2d 168, 173 (4th Cir.1984)). In contrast, the Fifth Circuit has recognized that

> the "reasonable relation" test of UCC § 1–105(1), limits party autonomy only to the extent that it forbids them to select the law of a jurisdiction that has "no normal relation to the transaction." ...

> The parties' choice should be upheld unless the transaction lacks a *normal* connection with the state whose law was selected. Only when it is shown that the contact did not occur in the normal course of the transaction, but was contrived to validate the parties' choice of law, should the relationship be held unreasonable; in other cases, it should be upheld. Courts should guard against combining notions of sovereignty in choice of law with the flexibility of the Code's "reasonable relation" test to strike down the selected law—leaving the parties with an uncertainty which the Code was designed to eliminate.

Nordstrom & Ramerman, *The Uniform Commercial Code and the Choice of Law*, 1969 Duke L.J. 623, 628 (1969). *Woods–Tucker*, 642 F.2d at 750–51. Application of this more lenient standard leads the court to conclude that the transaction at issue does bear a reasonable relation to the state of Virginia. The Virginia District Court specifically found that Superfos maintains its principal place of business in Virginia Beach, Virginia; that the contract was negotiated by means of telephone calls, correspondence and facsimile transmissions between Superfos in Virginia and FirstMiss in Mississippi; that the negotiated contract required FirstMiss to prepare

and deliver to Superfos quarterly forecasts of the amount of anhydrous ammonia it intended to purchase; that FirstMiss was to provide notice of the amount to be purchased, as well as any product orders, delivery instructions, complaints or problems regarding the quality or quantity of the product to Superfos' Virginia office; and that all but three of FirstMiss' monthly payments were made to Superfos' Virginia bank account. It is manifest that these represent "normal" contacts with Virginia such that the parties' choice of that state's laws should be given effect. *See Gilchrist Mach. Co. v. Komatsu America Corp.*, 601 F.Supp. 1192, 1200–01 (S.D.Miss.1984) (choice of law provision enforceable where chosen state was headquarters of one of contracting parties and was where the agreement was executed on that party's behalf).

Superfos argues that even if the "reasonable relation" test is satisfied such that the substantive law of Virginia would otherwise apply to the transaction, the limitation provision of the agreement must be governed by Mississippi law since (1) under Mississippi law statutes of limitation are considered to be procedural, rather than substantive, and (2) Mississippi's statutes of limitation are important matters of public policy in Mississippi such that the Mississippi courts would refuse to enforce any state's contrary laws. The court finds neither of these arguments persuasive.

■■■ Generally, while Mississippi will apply the substantive law of the state chosen by the parties where that chosen state bears a reasonable relation to the transaction, Mississippi applies its own laws in matters of procedure. *Price v. Litton Systems, Inc.*, 784 F.2d 600, 605 (5th Cir.1986) (citing *Davis v. National Gypsum Co.*, 743 F.2d 1132, 1134 (5th Cir.1984). And Mississippi courts have long treated statutes of limitation as procedural, rather than substantive in nature. *Williams v. Taylor Mach., Inc.*, 529 So.2d 606, 609 (Miss.1988). However, the question confronting this court is not strictly one of which of two states' statutes of limitations to apply, but rather the choice is between whether to

apply a Virginia statute granting contracting parties a right to agree to a shorter limitations period than that prescribed by statute or a Mississippi statute which denies parties that right. The United States Supreme Court has recognized that statutes such as those under consideration affect the substantive rights of the parties, and do not merely establish procedure or remedies. In *Home Insurance Co. v. Dick*, 281 U.S. 397, 50 S.Ct. 338, 74 L.Ed. 926 (1930), the Court, in considering a Texas statute limiting the rights of parties to contract for a shorter limitations period, observed as follows:

> The statute is not simply one of limitation. It does not merely fix the time in which the aid of the Texas courts may be invoked. Nor does it govern only the remedies available in the Texas courts. It deals with the powers and capacities of persons and corporations. It expressly prohibits the making of certain contracts. As construed, it also directs the disregard in Texas of contractual rights and obligations wherever created and assumed; and it commands the enforcement of obligations in excess of those contracted for ... It is true also that a state is not bound to provide remedies and procedure to suit the wishes of individual litigants. It may prescribe the kind of remedies available in its court and dictate the practice and procedure to be followed in pursuing those remedies. Contractual provisions relating to these matters, even if valid where made, are often disregarded by the court of the forum, pursuant to statute or otherwise. *But the Texas statute deals neither with the kind of remedy available nor with the mode in which it is to be pursued. It purports to create rights and obligations.*

*Dick*, 281 U.S. at 407–410, 50 S.Ct. at 341–342. The Virginia statute is thus substantive, and not merely a procedural statutory limitation period.

■ The Mississippi Supreme Court has held that it will not apply the substantive laws of another jurisdiction when to do so would be "contrary to the deeply ingrained and strongly felt public policy" of Mississippi, *Boardman v. United Servs. Auto. Ass'n*, 470 So.2d 1024, 1031 (Miss.1985), and in that situation, the court will apply and enforce Mississippi law. Superfos urges that the Virginia statute permitting a contractual shortening of a statute of limitations is repugnant to a deeply ingrained public policy of Mississippi such that the Mississippi courts would refuse to give effect to the Virginia statute. In support of its position, Superfos points to a statement by the Mississippi Supreme Court in *Shewbrooks v. A.C. & S., Inc.*, 529 So.2d 557, 568 (Miss.1988), that "[w]hat time limitation should be imposed on litigants filing suit in courts of this state embraces broad matters of public policy, which clearly are matters for the Legislature to decide, as indeed they have throughout history." [4] Superfos reasons that because the Legislature expressed its intention by enacting § 15–1–5 that contractual limitations of action not be enforceable in the state of Mississippi, that expression by the Legislature thus embodies important public policy of this state. The court cannot accept the proposition that the Mississippi Legislature's having enacted the statute at issue is determina-

---

**4.** The court in *Shewbrooks* held that tort claims brought by non-resident plaintiffs against non-resident defendants based on causes of action which arose outside of Mississippi would be governed by Mississippi's six-year statute of limitations for tort actions. Subsequent to the decision in *Shewbrooks*, the Mississippi Legislature amended the state's borrowing statute, Miss. Code Ann. § 15–1–65, to provide that in that circumstance, the limitation period of the state in which the cause of action accrued would be applied. The statute now provides:

> When a cause of action has accrued outside of this state, and by the laws of the place where

such cause of action accrued, an action thereon cannot be maintained by reason of lapse of time, then no action thereon shall be maintained in this state; provided, however, that where such cause of action has accrued in favor of a resident of this state, this state's law on the period of limitation shall apply.

Thus, to the extent that *Shewbrooks* may once have been read as demonstrating a strong public policy in Mississippi's applying its own limitations rules, that case can no longer be considered indicative of the public policy of the state.

tive of whether that statute represents such an important public policy of Mississippi that a contrary law from another state can never be applied. It bears emphasis that only those laws which represent fundamental and "deeply ingrained" public policy must be given effect. *See, e.g., McNeal v. Administrator of Estate of McNeal,* 254 So.2d 521, 524 (Miss.1971) (intrafamily tort immunity); *Mitchell v. Craft,* 211 So.2d 509, 513–16 (Miss.1968) (comparative negligence). Other lesser public policies do not bar enforcement of contrary laws from other jurisdictions. *Price,* 784 F.2d at 606; *see also Broadhead v. Hartford Cas. Ins. Co.,* 773 F.Supp. 882, 904 (S.D.Miss.1991) (Mississippi's adoption of stringent standards for availability of punitive damage awards did not establish important public policy). The Fifth Circuit has explicitly recognized that

> Mississippi would not view the policy behind its statute of limitations to be so fundamental as to forbid enforcement of another state's substantive limitations period. Any other holding would result in the application of Mississippi's limitation period in every case, a result we do not believe comports with Mississippi precedent.

*Price,* 784 F.2d at 606. As indicated *supra,* the conflicting laws before the court for consideration are not statutes of limitations per se. The policy behind the Mississippi statute at issue, however, the purpose of which is to prevent contractual limitation of a statutory limitations period, cannot logically be viewed as being more fundamental a public policy of this state than the statutory limitations period itself. That is, since the Mississippi courts do not consider other state's substantive statutes of limitations so repugnant to Mississippi public policy that they would refuse to apply them,[5] it cannot be reasonably concluded that another state's substantive statute which permits a contractual reduction of a

statutory limitations period would be so offensive. Therefore, the court concludes that the Mississippi courts would give effect to the parties' choice of Virginia substantive law, including the limitations period included in the parties agreement, with the result that the limitations provided by the parties contract—a valid provision under Virginia law—will be given effect where applicable. The next question, though, is whether that provision is applicable to the claim asserted in this action by Superfos.

The agreement executed between the parties provides at paragraph 1 that

> Seller shall sell, transfer, convey and deliver to Buyer, and Buyer shall purchase and accept from Seller, not less than Eighty Thousand (80,000) and not more than One Hundred Twenty Thousand (120,000) tons of anhydrous ammonia pursuant to this Agreement during each Contract Year. ... In the event Buyer does not purchase the required minimum annual volume of 80,000 tons ... pursuant to this Agreement, Seller shall invoice Buyer for such volume required to be purchased hereunder as if the product had been purchased on December 31 of the then current Contract Year. Buyer shall pay such invoiced amount within ten (10) days of receipt of invoices.

Paragraph 6 of the agreement provides:

> Seller shall deliver invoices to Buyer as soon after the end of each calendar month as is reasonably possible, with a target date of no later than the 10th day of the month. Buyer shall make payment to Seller for each month's purchases on or before the 15th day of the following month (i.e., the month after the month of purchase). ...

The limitations period is prescribed in paragraph 12 of the agreement, which provides in its entirety as follows:

> Notice by Seller or Buyer of claims as to the product delivered, or for the nonde-

---

**5.** Mississippi does not hesitate to apply another state's statute of limitations "where the limitations period is considered to be part of the substantive law because it is 'built in' or 'in the same enactment' as the statute which creates the right to the action." *Price,* 784 F.2d at 605; *see* *also Williams,* 529 So.2d at 609; *White v. Malone Properties, Inc.,* 494 So.2d 576, 578 (Miss. 1986). Mississippi, therefore, will apply limitations provisions which are clearly substantive in nature. *See also supra* note 4.

livery thereof, shall be made within thirty (30) days after delivery, or the date fixed for delivery, as the case may be. Failure to give such notice shall constitute a waiver by Seller or Buyer of all claims in respect thereto. Buyer's sole claim for loss or damage arising from nondelivery of product hereunder shall be the difference between the price for the product specified in this Agreement and the average price of such product then charged by major suppliers of product at the point of shipment specified in this Agreement, duly adjusted for freight charges. Seller shall use best efforts to notify Buyer of any impending failure of delivery by Seller hereunder. In no event shall any claims of any kind be greater than, nor shall Seller in any event be liable for, any amount in excess of the purchase price of the product in respect of which a claim is made. SELLER SHALL NOT BE LIABLE FOR ANY SPECIAL, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES ARISING FROM SELLER'S PERFORMANCE OR BREACH OF THIS AGREEMENT AND/OR USE OR POSSESSION OF THE PRODUCT, OR FOR LOSS OF PROFIT FROM RESALE OF PRODUCT. *No suit or legal proceeding arising upon this Agreement shall be maintainable against Seller or Buyer unless commenced or made within one (1) year after passing of title to product or delivery of or failure to deliver product hereunder.* (emphasis supplied).

FirstMiss contends that under the "take or pay" clause in paragraph 1 and the invoicing provisions contained in paragraph 6 of the agreement, Superfos' claim for a shortfall in the 1989 contract year accrued no later than January 20, 1990, reasoning as follows: If a breach occurred for the 1989 calendar year as a result of a shortfall, that breach occurred no later than December 31, 1989, and Superfos was thus required to invoice FirstMiss for the shortfall "as soon after the end of each calendar month as is reasonably possible, with a target date of no later than the 10th day of the month." Since paragraph 1 required

that FirstMiss pay for any annual shortfall within ten days of receipt of the invoice for that shortfall, the claim for nonpayment for the shortfall would have accrued no later than January 20, 1990. FirstMiss maintains that the claim is therefore barred, since the agreement provides that all claims must be brought within one year after they accrue; Superfos did not invoice FirstMiss for the 1989 shortfall until March 14, 1991 and did not file suit until May 13, 1991, well over a year after the claim had accrued.

In contrast to the position taken by FirstMiss, Superfos argues that the limitations period contained in paragraph 12 of the contract does not limit the time for asserting any and all claims under the agreement, regardless of their nature, to one year from the time they accrue, but rather only operates to limit the time for bringing claims as to "the produce delivered, or for the nondelivery thereof." The limitations period, Superfos argues, does not speak in general terms of the "accrual" of any claim, but instead, premises the commencement of the one-year period on the occurrence of three specifically defined events: (1) the passing of title to the product; (2) the delivery of the product; or (3) the failure to deliver the product. It reasons that since none of those three events has occurred with respect to the disputed claim, the limitations period cannot be held to apply to its claim for a shortfall. Further, Superfos maintains that there is no requirement in the agreement that it invoice FirstMiss for product not taken in 1989 at any specific time, and that accordingly, even if the limitations period were held to apply to claims of the nature of that presently asserted, there would remain a disputed issue of fact as to when its cause of action accrued.

The court has reviewed the contract in its entirety and cannot conclude that the agreement unambiguously bars Superfos' claim for the 1989 shortfall. While the limitation provision of paragraph 12 does state that "No suit or legal proceeding *arising upon this Agreement* shall be maintainable," (emphasis supplied), the pro-

vision is included in a paragraph of the contract which addresses "claims as to the product delivered, or for the nondelivery thereof." The claim asserted by Superfos is of neither variety. Moreover, none of the events which is described in paragraph 12 as an event which will commence the running of the one-year period has occurred. The nature of the claim asserted is that FirstMiss failed to take delivery of the requisite amount of the product. As to the balance of the product of which FirstMiss failed to take delivery, title to the product never passed and the product clearly was not delivered. Additionally, there was no "failure to deliver" the product by Superfos, but rather a failure of FirstMiss to take delivery of the product. Moreover, as Superfos' contends, the agreement does not unambiguously set forth a time when Superfos was required to invoice FirstMiss for the 1989 shortfall.

A contract is said to be ambiguous if it is susceptible to more than one reasonable interpretation. *Granite State Ins. Co. v. Bottoms*, 243 Va. 228, 415 S.E.2d 131 (1992) ("language is ambiguous when it may be understood in more than one way or when it refers to two or more things at the same time."). Under Virginia law, whether an ambiguity exists is determined by giving fair consideration to the entire document and all the words used in it. *Greater Richmond Civic Recreation, Inc. v. A.H. Ewing's Sons, Inc.*, 200 Va. 593, 596, 106 S.E.2d 595, 597 (1959).[6] Further, the interpretation of an unambiguous contract is a matter of law; but the interpretation of an ambiguous contract requires extrinsic evidence of the parties' intent and, therefore, is a matter of fact. *Southern Natural Gas Co. v. Pursue Energy*, 781 F.2d 1079, 1081 (5th Cir.1986); *cf. Foreign Mission Bd. of the Southern Baptist Conv. v. Wade*, 242 Va. 234, 409 S.E.2d 144 (1991) (submitting written contract to jury for interpretation proper when language is ambiguous). The court is of the opinion that the agreement is ambiguous as it pertains to the questions of when a cause of action "accrued" for a claimed shortfall in 1989, and whether the limitations period of paragraph 12 was intended to apply to Superfos' claim for such a shortfall. Therefore, defendant's motion for summary judgment must be denied.

Accordingly, it is ordered that the motion of defendant FirstMiss to dismiss or, in the alternative, for partial summary judgment is denied.

ORDERED.

---

6. Mississippi law is in accord. *See Pfisterer v.* *Noble*, 320 So.2d 383, 384 (Miss.1975).