Louis Wallach, J.
Defendant moves to reargue the decision of this court of November 1, 1973 which granted plaintiff’s motion for summary judgment. The basis of that decision was *456 that defendant’s opposing affidavit was by an attorney who did not have personal knowledge of the facts and therefore the affidavit was of no probative value and had to be disregarded. (See Di Sabato v. Soffes, 9 A D 2d 297.) Upon reargument, defendant has submitted an affidavit in proper form and, accordingly, the motion to reargue is granted, the decision of November 1, 1973 is withdrawn and the following decision is substituted in its place:
The fundamental question presented on this motion by plaintiff for summary judgment is the constitutionality of that portion of thé direct action statute of the State of Louisiana which provides, inter alia, that the operation by a nonresident of a motor vehicle in Louisiana: “ shall be deemed equivalent to an appointment by such non-resident of the secretary of state of Louisiana or his successor in office, to be his true and lawful attorney for service of process, as well as the attorney for service of process of the public liability and property damage insurer of the vehicle, if such insurer be a non-residetyit not authorised to do business in the state ”. (Emphasis supplied; La. Rev. Stat, § 13:3474)
This is an action by plaintiff, a resident of Louisiana, against defendant, an insurance company licensed to do business in New York, Connecticut and New Jersey, whose principal office is located in Queens County, New York City. Plaintiff alleges that a judgment was rendered on November 6,1970 in an action in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana, in its favor and against the defendant in the sum of $8,282 and that this judgment has not been paid.
Plaintiff has instituted this action in New York to enforce the unpaid Louisiana judgment which arose from an automobile accident which occurred on May 6,1968 in the State of Louisiana. In that accident, plaintiff suffered personal injuries and thereafter brought an action pursuant to Louisiana’s direct action statute against the defendant’s insured (a New York domiciliary) and the defendant which had issued a liability insurance policy to the insured in New York. Defendant did not appear in the Louisiana action and in due course a default judgment was entered against it. Defendant alleges as an affirmative defense to this action that the courts of Louisiana lack jurisdiction to render a judgment against it because it was not licensed to do business in Louisiana and did not transact any business in Louisiana and, consequently, the judgment against it violated the due process clause of the United States Constitution.
*457 The full faith and credit clause of the United States Constitution requires the courts of this State to enforce the judgments of sister States, provided that the sister State’s judgment was rendered by a court that had jurisdiction over the parties. (See Pennoyer v. Neff, 95 U. S. 714; Hanna v. Stedman, 230 N. Y. 326.) Accordingly, it is required that this court determine whether the Louisiana. statute which empowered the Louisiana court to assume jurisdiction over the defendant is constitutional. Both parties agree on the general jurisdictional principles which govern the determination of this lawsuit; they strenuously isagree on how these principles should be applied. Historically, the presence of the defendant within the State when the auction was commenced was a prerequisite to the exercise of jurisdiction. (Pennoyer v. Neff, supra.) However, in International Shoe Co. v. Washington (326 U. S. 310), the United States Supreme Court, in response to technological advances and the changing nature of commerce in this country, set forth the groundwork for a new jurisdictional structure. In International Shoe (supra, p. 316), the court stated: “ due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend ‘ traditional notions of fair play and substantial justice ’ ”. The court also stated (p. 319): that “ whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties or relations.”
Pursuant to these principles, many States enacted “ long arm ’ ’ and other statutes which extended the jurisdiction which their courts could exercise to the limits provided in International Shoe (supra). Finally, in Hanson v. Denckla (357 U. S. 235, 251), the Supreme Court indicated that there were still limits to the jurisdictional powers of States and the court cautioned,, with regard to the expanding bases of jurisdiction, that “ it is' a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts.” The court continued (p. 253): “ The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State * * * it is essential in each case that there be some act by *458 which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.”
Defendant contends that an application of these principles requires a holding that the statute is unconstitutional because the defendant does not do business or transact any business in the State of Louisiana and thus has no “ minimum 'contacts ” with that ¡State.
At the outset, this court does not agree with the defendant’s contention that the absence of acts performed by it in Louisiana makes it, as a matter of law, not subject to the jurisdiction of the courts of that State. There are instances in which a person who does not perform an act in a State is, nevertheless, held subject to the jurisdiction of its courts. For example, where a nonresident decedent during his lifetime performs certain acts in New York, the courts of our State have held that his executor may be served outside the State in lawsuits arising from those acts. (See Rosenfeld v. Hotel Corp. of Amer., 20 N Y 2d 25; see, also, CPLEt 302.) Similarly, where an agent of a foreign corporation performs acts within the State, the principal corporation is subject to suit here for the acts of the agent performed at its behest. (See Frummer v. Hilton Hotels Int., 19 N Y 2d 533, cert. den. 389 U. S. 923.) Finally, in Parke-Bernet Galleries v. Franklyn (26 N Y 2d 13, 17), the Court of Appeals stated: ‘ ‘ It is important to emphasize that one need not be physically present in order to be subject to the jurisdiction of our courts under CPLB, 302 for, particularly in this date of instant long-range communications, one can engage in extensive purposeful activity here without ever actually setting foot in the State.”
The question that now remains for determination is whether, even though defendant did not do business, transact any business, mail policies into Louisiana or have any other connection with that State, it still had sufficient “ minimum contacts ” to satisfy the test set forth in International Shoe (326 U. S. 310, supra). In Pugh v. Oklahoma Farm Bur. Mut. Ins. Co. (159 F. Supp. 155), the court was presented with precisely the same question since the defendant insurer in that action did not do business or transact business in Louisiana and, as in the case at bar, was sued when its insured was involved in an accident in Louisiana. The court found that the minimum contact requirement was met where the insurer’s only contact with the State was its “ presence on the risk ” at the time of the accident. The court stated (pp. 158-159): “ Since the accident *459 within the state is sufficient contact to justify maintenance of the suit for damages against the nonresident motorist, it would seem that the same accident should justify maintenance of suit against his nonresident liability insurer who, after all, is the real party in interest.”
"While, in the opinion of this court, the acts of the insured in Louisiana are not attributable to the New York insurer, this court does perceive additional “ contacts ” which justify Louisiana’s jurisdiction over this matter. When a New York insurance company issues a motor vehicle liability policy in New York to a New York driver, it agrees to insure him against accidents in all States and must obviously foresee that the driver will drive outside the State. It knows that the carnage of automobile accidents is not limited to New York and that its insureds will invariably be involved in accidents all over the country. In insuring the New York resident against accidents wherever he drives, the insurer in a sense also agrees to insure the public. Under these circumstances, this court is of the opinion that the mere issuance of the policy in New York, in the context of a mobile society and the peculiar public character of insurance, is a sufficient purposeful act or contact to satisfy the minimum contacts required in the International Shoe case (326 U. S. 310, supra), even though the contacts here are admittedly tenuous. Moreover, the court also observes that pursuant to the decision of our own Court of Appeals in Seider v. Roth (17 NY 2d 111) and its progeny, the courts of our own State acquire jurisdiction (quasi in rem) predicated on the attachment of liability insurance policies in situations where the “ minimxun contacts ” appear to be just as tenuous and casual as in the case at bar.
The question which remains for determination is, even assuming that the “ minimum contacts ” are present, does the maintenance of this action offend 11 traditional notions of fair play and substantial justice”? (International Shoe Co. v. Washington, 326 U. S. 310.) This court holds that it does not for the following reasons:
In the leading case of Watson v. Employers Liab. Corp. (348 U. S. 66), the United States Supreme Court recognized that Louisiana’s direct action statute was a valid exercise of Louisiana’s legitimate interest in safeguarding the rights of persons injured there. The court stated (p. 72): “ Louisiana’s direct action statute is not a mere intermeddling in affairs beyond her boundaries which are no concern of hers. Persons injured or killed in Louisiana are most likely to be Louisiana *460 residents, and even if not, Louisiana may have to care for them. Serious injuries may require treatment in Louisiana homes or hospitals by Louisiana doctors. The injured may be destitute. They may be compelled to call upon friends, relatives, or the public for help. Louisiana has manifested its natural interest in the injured by providing remedies for recovery of damages. It has a similar interest in policies of insurance which are designed to assure ultimate payment of such damages. Moreover, Louisiana courts in.most instances provide the most convenient forum for trial of these cases. But modern transportation and business methods have made it more difficult to serve process on wrongdoers who live or do business in other states.”
The maintenance of the original Louisiana suit does not offend traditional notions of fair play and substantial justice. If the statute is held to be unconstitutional, a Louisiana plaintiff could not be compensated for his injury without the help of the courts of another State, even though he was injured in Louisiana. This court does not agree with defendant’s contention that it is unjust and presents unbearable hardship for it to be required to go down to Louisiana and become a party to the action in the first instance. In States which do not have direct action statutes and in which the injured plaintiff sues a defendant tort-feasor who is the real party in interest, the insurance company is obliged in any event to provide counsel and conduct a defense pursuant to the co-operation clause in a liability insurance policy. The real injustice would be to require the injured plaintiff, who is a resident of Louisiana, to come to New York under these circumstances to collect his judgment.
In addition, as the /court stated in Pugh v. Oklahoma Farm Bur. Mut. Ins. Co. (159 F. Supp. 155, 159): “ With reference 'to fair play, there is no suggestion that the insurer, served here pursuant to the statute in suit, will be treated less fairly than any other insurer otherwise served and required to defend under the direct action statute. If the defendant insurer harbored any doubt in the matter, it should have excluded Louisiana from the coverage of its policy. Having agreed to cover Louisiana risks, it cannot deny Louisiana courts the right to determine its liability on claims arising from accidents occurring in this state.” This court acknowledges that this decision sanctions the extension of the jurisdiction of Louisiana to its widest limit. However, the essence of jurisdiction and of due process is reasonableness and fairness and these tests are here satisfied.
Finally, defendant’s contention that the motion for summary judgment should be denied because it was never served with *461 process in the Louisiana action is without merit since there is irrefutable documentary evidence presented to the contrary. Accordingly, the motion for summary judgment is granted.