634 A.2d 63

Allen K. BAHN, et ux.

v.

CHICAGO MOTOR CLUB INSURANCE COMPANY.

No. 393, Sept. Term, 1993.

Court of Special Appeals of Maryland.

Dec. 10, 1993.

**560**

John G. Nalls (William J. Rowan, III and Rowan & Quirk, on the brief), Rockville, for appellants.

Elisabeth S. Rubin and Roger W. Titus (Venable, Baetjer & Howard, on the brief), Rockville, for appellee.

Argued before GARRITY, CATHELL and MOTZ, JJ.

MOTZ, Judge.

This appeal involves the question of whether a Maryland court has personal jurisdiction over a foreign automobile in-

surer sued by its own insured. The Circuit Court for Montgomery County held that it did not and so dismissed the claims of the insureds, appellants, Allen K. Bahn and his wife Sansherma Bahn, against the insurer, appellee, Chicago Motor Club Insurance Company (C.M.C.).

These claims arise out of a motor vehicle accident between Mr. Bahn and Loi H. Hang. On December 21, 1988, a vehicle driven by Mr. Hang smashed into a 1984 Volkswagen Rabbit driven by Mr. Bahn. Mr. Bahn sustained personal injuries and damage to his car, which was titled in the name of Lockheed Research, Inc., a family-owned business incorporated by Mr. Bahn and of which he was president. Lockheed is an Illinois corporation, and the car was titled and registered in that state under Lockheed's name. In 1985, however, Mr. and Mrs. Bahn moved to Maryland, brought the car with them, and then drove it in this State.

The insurer of the car, C.M.C., is incorporated in Illinois and licensed to do business only there and in Indiana. C.M.C. does not advertise in Maryland, maintains no agents in Maryland, and does not insure vehicles registered in Maryland. On February 11, 1986, after the Bahns had moved to Maryland, Mrs. Bahn, on behalf of Lockheed, obtained insurance from C.M.C. on the car. Mrs. Bahn supplied C.M.C. with Illinois addresses for both the mailing address and the place where the insured vehicle was "principally kept." Although Mr. Bahn swore in an affidavit that he advised C.M.C. "sometime in 1986, and certainly by January of 1987" that the new address of Lockheed was Gaithersburg, Maryland, between September, 1986 and October, 1987, the policy was twice renewed by C.M.C. and each renewal continued to reflect Illinois addresses.

In October, 1987, C.M.C. sent Lockheed a "Lapse of Coverage" notice, which C.M.C. mailed to one of Lockheed's Illinois addresses. The "Lapse of Coverage" notice stated:

This is to inform you that the required downpayment on your renewal policy has not been received, and your policy

has expired at 12:00 a.m. standard time on the expiration date shown above [October 22, 1987].

In order to renew this policy, the required downpayment must be received in this office not later than: 11/02/87. Upon receipt of this notice, the Bahns sent C.M.C., from Maryland, payment and the "Lapse of Coverage" notice, on which the Bahns had crossed out the Illinois mailing address and inserted as Lockheed's address: P.O. Box 850, Gaithersburg, Maryland 20877. C.M.C. then sent Lockheed, at the Gaithersburg address, a policy "declaration," dated November 23, 1987, for the policy period October 22, 1987 to April 22, 1988. The declaration contained the notation "policy renewed, change mailing address."[1] C.M.C. sent Lockheed, at the Gaithersburg address, another insurance policy "declaration," dated April 21, 1988 for the policy period April 22, 1988 to October 22, 1988.

On October 24, 1988, a second "Lapse of Coverage Notice" was issued by C.M.C. and sent to Lockheed at the Gaithersburg address. This notice contained language identical to that set forth above and requested a "total renewal premium" of $655 by "no later than" November 2, 1988 "in order to renew this policy." A check dated October 22, 1988, in that amount was mailed by Lockheed from Maryland to C.M.C. and was cashed by C.M.C. on November 9, 1988. C.M.C. then sent Lockheed, at the Gaithersburg address, another policy "declaration" marked "policy renewed." This one was dated November 9, 1988 and covered the period October 22, 1988 to April 22, 1989; it was the renewal in effect at the time of Mr. Bahn's accident with Mr. Hang.

The policy provided that "the ordinary use of [the] vehicle" was "pleasure/less than 3 miles to work [in Illinois] one way." The policy at all times also provided:

---

1. This declaration and subsequent declarations also contained the following language:

 The automobile will be principally kept and used in the above municipality and state unless otherwise specified herein: Downer's Grove, Illinois.

This policy applies only to accidents, occurrences and losses during the policy period while the automobile is within the United States of America, its territories or possessions, or Canada, or is being transported between ports thereof.

Mrs. Bahn reported the December 21, 1988 accident to C.M.C. on the next day by telephone. In response to that report, C.M.C. sent a letter to Lockheed in Maryland requesting additional information and advising its insureds not to give statements concerning the accident to anyone other than authorized agents of C.M.C. Mr. Bahn later received a letter, dated June 15, 1989, from a representative of Johns Eastern Company, Inc., a Maryland corporation, indicating that he was the local claims adjuster for C.M.C. and requesting that Mr. Bahn contact him so that repairs could be initiated on the vehicle. An appraisal was done of the vehicle in Bethesda, Maryland by Reed Appraisers, Inc., a company located in Wheaton, Maryland and hired by C.M.C. On August 3, 1989, C.M.C. wrote to Lockheed advising that the vehicle was a total loss and making an offer of settlement on the property damage aspect of the accident. A settlement as to property damage was reached and C.M.C. mailed a check to Maryland payable to Mr. Bahn in the amount of $2,250.00 in March of 1991. On March 25, 1991, C.M.C. wrote to the attorney for the Bahns requesting signatures on medical and wage authorizations. C.M.C. accepted a property damage subrogation settlement from Geico Insurance Company in Maryland in the amount of $1,380.00 on August 21, 1991.

The insurance policy included an under-insured motorist endorsement that provided coverage up to $500,000 for any one person per accident. Mr. Hang also was insured at the time of the accident, but his policy provided a $20,000 limit of liability. Therefore, the Bahns demanded payment from C.M.C. for personal injury to Mr. Bahn and loss of consortium in the amounts suffered in excess of $20,000. C.M.C. refused payment.

On December 17, 1991, the Bahns filed a four-count complaint in the circuit court. Counts I and II (personal injury

and loss of consortium, respectively) sought damages from Mr. Hang; Counts III and IV alleged that C.M.C. had breached its insurance contract by refusing to pay the Bahns damages for those injuries under the under-insured motorist coverage. Mr. Hang answered the complaint, asserting that he was not liable. C.M.C. filed a motion to dismiss for lack of personal jurisdiction.

After hearing argument of counsel, the circuit court dismissed [2] Counts III and IV against C.M.C. for lack of personal jurisdiction. In finding that it had no jurisdiction over C.M.C., the circuit court reasoned:

> [T]he essence of the dealings between the parties really came down to a billing situation. The Court finds that is not sufficient to establish jurisdiction in Maryland. The motion to dismiss on the basis claimed is granted.

Although Counts I and II remained against Mr. Hang, the Bahns moved, pursuant to Maryland Rule 2–602, to certify the judgment on the counts against C.M.C. as final, with no just reason for delay. The circuit court entered an order certifying the judgment as final, as requested. After entry of judgment in favor of C.M.C., the Bahns appealed. They present a single issue for our consideration:

> Whether the court erred in dismissing Counts III and IV of appellant's complaint on the grounds of lack of personal jurisdiction over the appellee.

Before addressing this question, we examine the circuit court's certification of the judgment for immediate appeal pursuant to Md.Rule 2–602(b). That rule provides in pertinent part:

---

**2.** Because in doing so the circuit court considered matters outside the pleadings, perhaps this should more correctly be considered a motion for and grant of summary judgment. *See* Md.Rule 2–322(c) (so directing when such material is the basis for a motion to dismiss for failure to state a claim upon which relief can be granted). In any event, the material facts are undisputed here, and so it makes little difference in this case. *But see, Bleich v. Florence Crittenton Services of Baltimore,* 98 Md.App. 123, 131–134, 632 A.2d 463 (1993).

... If the court expressly determines in a written order that there is no just reason for delay, it may direct in the order the entry of a final judgment:

> (1) as to one or more but fewer than all of the claims or parties ....

The order of the court below clearly is a final judgment within the scope of Md.Rule 2–602(b) in that it finally adjudicates the rights of one, but not all, of the parties. In addition, dismissal for lack of personal jurisdiction is a judgment that, absent the presence of multiple claims, is immediately appealable. *See e.g., Camelback Ski Corp. v. Behning,* 307 Md. 270, 513 A.2d 874, *vacated and remanded,* 480 U.S. 901, 107 S.Ct. 1341, 94 L.Ed.2d 512 (1987), *opinion on remand,* 312 Md. 330, 539 A.2d 1107 (1988). A trial court's exercise of its discretionary power to certify a final judgment for immediate appeal pursuant to Md.Rule 2–602(b) is, however, only to be exercised in the "very infrequent harsh case" in which an "early appellate decision of a particular point is of sufficient importance, or [in which] delay will produce sufficient hardship or unfairness, to outweigh the general policy against piecemeal appeals." *Planning Board v. Mortimer,* 310 Md. 639, 648, 530 A.2d 1237 (1987); *see also Diener Enters. v. Miller,* 266 Md. 551, 556, 295 A.2d 470 (1972); *Allstate Ins. Co. v. Angeletti,* 71 Md.App. 210, 219, 524 A.2d 798 (1987).

In moving for judgment pursuant to Md.Rule 2–602, the Bahns asserted:

> Because of the nature of the case involved herein, Government Employees Insurance Company on behalf of the Defendant Hang has offered its $20,000 policy limits to settle Hang's potential liability. The Plaintiffs have refused to accept the offer, and cannot accept the offer until the issue of whether or not Chicago Motor Club Insurance Company is or is not properly before the Court is finally determined. If the Plaintiff settles with the Defendant Hang, and gives a release, the Plaintiffs may potentially be releasing any liability against Chicago.

It is a waste of judicial time and effort, as well as an unnecessary expenditure of time on behalf of counsel and the parties to proceed in this case and try it against the Defendant Hang, appeal the issue of Chicago's dismissal on the jurisdictional grounds, and, if successful, have to return to this Court for the second trial against Chicago. It makes more sense to try the two cases together, particularly the damage issues, at one time.

There is no just reason for delay in entry of Judgment in favor of Chicago under the facts of this case.

When neither C.M.C. nor Hang opposed this motion, the circuit court adopted these reasons as the basis for its decision to certify the judgment as immediately appealable. On appeal, no party maintains that this certification was an abuse of discretion. Without addressing whether the circuit court properly exercised its discretion, we shall exercise ours and entertain the appeal.

■ Turning then to the merits, the Court of Appeals has directed that when a Maryland court determines whether it may exercise personal jurisdiction over a nonresident defendant, it must engage in a two prong analysis. First, it must determine whether jurisdiction is established under Maryland's long arm statute, Md.Code (1974, 1989 Repl.Vol.), § 6–103 of the Courts & Judicial Proceedings Article, and if so, then it must determine whether the exercise of jurisdiction comports with the Fourteenth Amendment Due Process Clause. *Mohamed v. Michael,* 279 Md. 653, 657, 370 A.2d 551 (1977); *Jason Pharmaceutical v. Jianas Bros. Packaging Co.,* 94 Md.App. 425, 434, 617 A.2d 1125 (1993). The analysis of these two elements is intertwined, because the intent of the statute was to expand the scope of personal jurisdiction over non-resident defendants to the full extent of the Due Process Clause. *Mohamed,* 279 Md. at 657, 370 A.2d 551.[3]

---

**3.** In fact, because, as the parties concede, the intent of the General Assembly was to expand the scope of the long arm statute to the full extent that due process permits, it would seem that the statutory and due process analyses would be identical. *See Rossman v. State Farm*

The Bahns suggest that three provisions of the long arm statute confer jurisdiction on Maryland courts in this case:

A court may exercise personal jurisdiction over a person, who directly or by an agent:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply goods, food, services, or manufactured products in the State;

. . . .

(6) Contracts to insure ... any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

§ 6–103(b).

Only one provision of the statute need be satisfied in order to assert jurisdiction. *Tate v. Blue Cross of Washington and Alaska*, 59 Md.App. 206, 217, 474 A.2d 1353 (1984). The first provision, the transaction of business under § 6–103(b)(1), requires "actions [that] culminate in purposeful activity within the State." *Sleph v. Radtke*, 76 Md.App. 418, 427, 545 A.2d 111, *cert. denied*, 314 Md. 193, 550 A.2d 381 (1988). The defendant need never have been physically present in the state. *Id.* Therefore, that C.M.C. is incorporated in Illinois and licensed to do business only in that state and Indiana does not preclude personal jurisdiction in Maryland, if the insurer transacted business here. *Tate*, 59 Md.App. at 214–15, 474 A.2d 1353.

Under Maryland law, the renewal of an insurance policy is a new contract. *Reserve Ins. Co. v. Duckett*, 249 Md. 108, 119, 238 A.2d 536 (1968). The place of contracting is the state to which the policy is delivered and from which the

*Mut. Ins. Co.*, 832 F.2d 282, 286 n. 1 (4th Cir.1987) (so concluding with regard to the Virginia long arm statute, which was also intended to "assert[ ] jurisdiction to the extent due process permits"). The Court of Appeals, however, has yet to so hold.

premiums were paid. *Aetna Casualty & Sur. v. Souras,* 78 Md.App. 71, 77, 552 A.2d 908 (1989). It seems to us, therefore, that C.M.C. was transacting business in Maryland when it sent the renewals here, and accepted payment under the renewals from Maryland. *Jason Pharmaceuticals,* 94 Md. App. at 432, 617 A.2d 1125 (foreign corporation's "one-transaction contract" with a Maryland corporation constitutes transaction of business "within meaning of § 6–103(b)(1)"). *Cf. Harris v. Arlen Properties, Inc.,* 256 Md. 185, 198, 260 A.2d 22 (1969) (finding sufficient contacts to constitute transaction of business although contract was not executed in Maryland and implying that execution of contract here would be transaction of business).

C.M.C. asserts that it has neither transacted business nor formed any contracts in Maryland because it was told by the Bahns that the insured automobile remained in Illinois, so when it sent renewals to and received premiums from Maryland it was not intending to make any contract here. Rather, C.M.C. argues, the need to correspond with Maryland was initiated unilaterally by the Bahns who moved here and who failed to pay their premiums, necessitating that the insurer send the lapse of coverage notices. In sum, C.M.C. maintains that the renewals do not constitute contracts made in Maryland because the Bahns allegedly concealed from the insurer the location of the car and if it had known the car was located in Maryland, it would never have provided insurance.[4]

The problem with this argument is that whether the Bahns breached the insurance contract, thus relieving C.M.C. of liability, is a question going to the merits of the claim against C.M.C., not the jurisdictional issue. *See Jason Pharmaceuti-*

---

**4.** C.M.C. points out that the premium for the last renewal period was paid by Millicent Systems, Inc., and that there is no indication of its relationship to the Bahns. It is unclear what the significance of this fact is. We note that Millicent Systems and Lockheed share the same post office box in Gaithersburg, Maryland. Moreover, it is obvious that C.M.C. *recognized* the payment from Millicent Systems as a payment from the Bahns or Lockheed and applied it to renew the Bahns' policy because C.M.C. does not dispute that, absent some contractual defense, the Bahns were covered by the policy renewal.

*cals,* 94 Md.App. at 431 n. 3, 617 A.2d 1125. In *Groom v. Margulies,* 257 Md. 691, 265 A.2d 249 (1970), the Court of Appeals specifically explained that when "considering problems arising under the Long Arm Statute, it is important to distinguish between the *jurisdiction* of the forum state over the out-of-state defendant, on the one hand, and the *merits* of the case, on the other." *Id.* at 703, 265 A.2d 249. (emphasis in original). Thus, it concluded that a Maryland court did have jurisdiction over an individual defendant who negotiated contracts in Maryland; if, as the defendant asserted, he was acting for a disclosed principal, then he would have a defense to the claim but this did not mean that the Maryland courts lacked jurisdiction over him. *Id.* at 703–04, 265 A.2d 249. Here, although the sending of lapse of coverage notices was necessitated by the Bahns' failure to pay on time, the fact remains that C.M.C. sent the notices in order to retain the Bahns' business. "In the last analysis, the 'business' of [C.M.C.] was to collect premiums and to disburse benefits." *Tate,* 59 Md.App. at 215, 474 A.2d 1353. In order to carry out this business, C.M.C. sent notices to the Bahns in Maryland, contracted with them in this State, and received payments from them sent from this State. The fact that C.M.C. believed the automobile to be in another state does not change the nature of C.M.C.'s activity in Maryland. Because C.M.C. sent notices to the Bahns in Maryland, contracted with the Bahns in Maryland, and received payments sent by the Bahns from Maryland, the insurer transacted business in this State within the meaning of § 6–103(b)(1).

Having concluded that C.M.C. "transacted business" within the meaning of Maryland's long-arm statute, we must determine whether the exercise of jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment. The standard applied in this analysis is whether the defendant has sufficient "minimum contacts" with the forum state to justify assumption of personal jurisdiction and whether, under all the circumstances, maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154,

158, 90 L.Ed. 95 (1945); *Camelback Ski Corp. v. Behning,* 312 Md. 330, 335, 539 A.2d 1107 (1988).

Generally, when "the cause of action does not arise out of, or is not directly related to, the conduct of the defendant within the forum, contacts reflecting continuous and general business conduct will be required to sustain jurisdiction;" this is "general jurisdiction." *Camelback,* 312 Md. at 338, 539 A.2d 1107 and cases cited therein. "On the other hand, when the cause of action arises out of the contacts that the defendant had with the forum, it may be entirely fair to permit the exercise of jurisdiction" simply on the basis of those contacts; this is "specific jurisdiction." *Id.* at 336–39, 539 A.2d 1107. It is clear that "specific jurisdiction," *i.e.,* "a claim arising out of the issuance and delivery of a single . . . insurance policy" is at issue here. *Id.* at 339, 539 A.2d 1107 (so characterizing the claim in *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)). *See also Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.,* 907 F.2d 911, 913 (9th Cir.1990); *Lynch v. New Jersey Auto. Full Ins. Underwriting Ass'n,* 762 F.Supp. 101, 103 (E.D.Pa.1991); *Batton v. Tennessee Farmers Mut. Ins. Co.,* 153 Ariz. 268, 270, 736 P.2d 2, 5 (1987) (en banc). In contrast, in *Camelback* the "contacts required to support jurisdiction more nearly resemble[d] those of a general jurisdiction case." *Camelback,* 312 Md. at 339, 539 A.2d 1107. Thus, C.M.C.'s heavy reliance on *Camelback* as setting forth "the relevant factors" necessary to establish "the quality and quantity of contacts required" in the case at hand is misplaced.

When, as here, "specific jurisdiction is at issue, the minimum-contacts inquiry focuses on the relationship between the defendant, the forum, and the litigation." *Batton,* 736 P.2d at 5 (citing *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 775, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984) and *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977)). The critical question is whether a defendant's "connection with the forum State [is] such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct.

559, 567, 62 L.Ed.2d 490 (1980). In determining when a defendant can "reasonably anticipate" out-of-state litigation, the Supreme Court has held that the foreseeability of an injury or event in another state is "not a 'sufficient benchmark' for exercising personal jurisdiction." *Burger King Corp. v. Rodzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (quoting *World–Wide Volkswagen*, 444 U.S. at 295, 100 S.Ct. at 566). Thus, instead of limiting its inquiry to the foreseeability of out-of-state litigation, a court must determine whether a defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum state." *See Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

The parties do not cite, and we have been unable to find, any Maryland case involving the precise issues implicated here. Indeed, the only cases involving jurisdiction over non-resident insurers that the parties have cited are *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) and *Tate v. Blue Cross of Washington and Alaska*, 59 Md.App. 206, 474 A.2d 1353 (1984). In *McGee* the Supreme Court held that one life insurance policy provided California with sufficient contacts so that its courts could exercise jurisdiction over a defendant insurer, whose principal place of business was Texas and who did not solicit business in California or have an office or agent in California. *McGee*, 355 U.S. at 222, 78 S.Ct. at 201. Similarly, in *Tate* we concluded that one health insurance policy provided Maryland with sufficient contacts so that its courts could exercise jurisdiction over a defendant insurer, whose principal place of business was the state of Washington, who had no office or agent in Maryland, and who was not qualified to do business in Maryland. *Tate*, 59 Md.App. at 215, 474 A.2d 1353. Thus, these cases clearly establish that a single insurance contract, when it forms the basis of the cause of action, can provide sufficient contacts for assertion of jurisdiction over an out-of-state defendant, with no other contacts in the forum state. *McGee* and *Tate* are distinguishable from the case at hand, however. In *McGee* the insurer knew the insured was a

California resident when it agreed to insure his life, and in *Tate* the insurer knew that the insured was seeking treatment in Maryland, before that treatment was obtained under the health insurance policy, and the insurer had already remitted some payments to the Maryland health care provider.

Although not cited by the parties, there is, in fact, a significant body of law addressing whether a forum state has personal jurisdiction over a foreign insurance company when sued by persons injured by the company's insured in an automobile accident in the forum state. Typical of these cases is *Rossman v. State Farm Mut. Auto. Ins. Co.*, 832 F.2d 282 (4th Cir.1987), in which the facts are, in many respects, similar to those in the case at hand. In *Rossman*, persons injured in an automobile accident in Virginia sued the other driver and her insurer, a foreign insurer. The automobile insurance policy at issue in *Rossman* was written and delivered in Illinois, and the insurer was told by its insured that the car was to be garaged in Illinois, although, in fact, the insured had moved with the car to Virginia prior to the accident. The insurer was not qualified to do business in Virginia and had no office or agents in that state; there were no renewals of the policy in Virginia or other correspondence to or from the forum state prior to the accident. The Virginia long arm statute at issue in *Rossman* was identical in all pertinent parts to that of Maryland. In the insurance policy in *Rossman*, like that at issue here, the insurer "specifically promised to defend its policyholders from any claim or suit arising from a loss or accident within its policy territory, which included the entire United States." *Id.* at 286.

The Court of Appeals for the Fourth Circuit concluded that the insurer in *Rossman* had the "requisite connections" to the forum state because it "could anticipate the risk that its clients would travel in their automobiles to different states and become involved in accidents and litigation there." *Id.* Of particular importance to the *Rossman* court was the policy provision by which the insurer agreed to defend suits arising anywhere in the United States. The *Rossman* court reasoned that such broad coverage benefits insurers because the policy

becomes more marketable, and with that benefit, insurers take the risk of being exposed to suit in many jurisdictions. *Id.* at 287. On the basis of this clause, the court distinguished the case before it from *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In *World–Wide Volkswagen*, the Supreme Court had held that New York automobile dealers, who sold a car in New York, which eventually was involved in an accident in Oklahoma, were not amenable to suit in Oklahoma. Although the dealers knew the car could go anywhere in the United States, they did not purposely avail themselves of any benefits of Oklahoma law or direct activities there; it was the purchaser's actions alone that took the car to Oklahoma. *Id.* at 295–98. The *Rossman* court concluded that in *World–Wide Volkswagen* "nothing about the defendant's conduct indicated its willingness to be called into court in the foreign forum" while in the case before it, the insurer's "expectation of being haled into court in a foreign state was an express feature of its policy," *i.e.*, the agreement to provide coverage and defend claims throughout the United States. *Rossman*, 832 F.2d at 286.

The majority rule seems to be that adopted in *Rossman;* the courts of a state in which an automobile accident occurs have personal jurisdiction over a nonresident insurer of the motorist who is liable to another driver for damages resulting from the accident, when sued by the other driver, if the insurance policy provides for coverage in all fifty states. *See e.g., Farmers Ins. Exchange v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911 (9th Cir.1990); *Pugh v. Oklahoma Farm Bureau Mut. Ins. Co.*, 159 F.Supp. 155 (E.D.La.1958); *Parker v. Fireman's Ins. Co. of Newark*, 297 S.C. 166, 375 S.E.2d 325 (S.C.Ct.App.1988); *Bevins v. Comet Cas. Co.*, 28 Ill.Dec. 333, 390 N.E.2d 500 (1979); *Labruzzo v. State Wide Ins. Co.*, 77 Misc.2d 455, 353 N.Y.S.2d 98 (1974). *See also Payne v. Mutual Fire & Auto Ins. Co.*, 381 N.W.2d 523 (Minn.Ct.App. 1986) (policy coverage area, 75–mile radius from insured's place of business, extended into forum state). *But see, United Farm Bureau Mut. Ins. Co. v. U.S.F. & G.*, 501 Pa. 646, 462 A.2d 1300 (1983); *South Carolina Guar. Ass'n v. Underwood,*

527 So.2d 931 (Fla.Dist.Ct.App.1988); *Kight v. New Jersey Mfrs. Ins. Co.*, 441 So.2d 189 (Fla.Dist.Ct.App.1983). This rule has been applied even when the *only* contact the forum state has with the nonresident insurer is that the insurance policy contained the clause providing coverage throughout the United States. *See e.g., Farmers Ins. Exch.*, 907 F.2d at 913–14; *Pugh*, 159 F.Supp. at 158; *Labruzzo*, 353 N.Y.S.2d at 102; *Parker*, 375 S.E.2d at 325–26.

These cases, while helpful, do not address the precise question at issue here. All of them concern a suit by a driver (or the driver's passengers) against the other driver's insurer. The Bahns, of course, are attempting to sue their own insurer. There are cases dealing with such situations; however, most differ factually in some significant respect from the case at hand. In many of these cases, the automobile accident took place in the forum state and the insured, not resident in the forum state, attempted to sue its foreign insurer in that state, to recover medical benefits, uninsured motorist coverage, etc. payable under a policy, that was purchased, renewed, etc. in the foreign state. *See Batton v. Tennessee Farmers Mut. Ins. Co.*, 153 Ariz. 268, 736 P.2d 2 (1987) (en banc); *LaSee v. Freeze*, 615 So.2d 893 (La.Ct.App.1993); *Tennessee Farmers Mutual Ins. Co. v. Harris*, 833 S.W.2d 850 (Ky.Ct.App.1992); *State ex. rel. Illinois Farmers Ins. Co. v. Koehr*, 834 S.W.2d 233 (Mo.Ct.App.1992); *Hall v. Scott*, 416 So.2d 223 (La.Ct. App.), *cert. granted*, 420 So.2d 976 (1982); *Jones v. MFA Mut. Ins. Co.*, 398 So.2d 10 (La.Ct.App.1981). *See also Lynch v. New Jersey Automobile Ins. Underwriting Ass'n*, 762 F.Supp. 101 (E.D.Pa.1991). The only asserted contacts between the forum state and the insurer in these cases were: (1) the policy clause providing coverage "within the United States;" and (2) various post-accident contacts. *See, e.g., Lynch*, 762 F.Supp. at 102; *Batton*, 736 P.2d at 3; *Harris*, 833 So.2d at 851.

The courts have unanimously concluded that these factors do not provide sufficient contacts to establish personal jurisdiction over the foreign insurer. They have reasoned that while the promise to provide coverage throughout the United

States may evidence that the insurer "has agreed to submit to jurisdiction in any forum that has jurisdiction to adjudicate claims against its indemnitee," its "agreement to defend and indemnify [its insured] in any state does not imply an agreement to allow its insured to bring suit [against it] in any state." *Batton,* 736 P.2d at 6–7. If "the operator of a motor vehicle [drove in the forum state] and negligently caused injury to another, then clearly [the forum state] would have personal jurisdiction over her *liability insurance* carrier for the damages she caused *in tort,*" but a "suit in *contract* " by the insured against her insurer raises different considerations. *Hall,* 416 So.2d at 229. (emphasis in original). The insurer may be able to foresee that the insured would "travel to another state and be involved in litigation [there] but … this was not a sufficient contact to satisfy Due Process requirements on a suit *in contract* under uninsured motorist coverage." *Id.* at 230 (emphasis in original); *Jones,* 398 So.2d at 12–13. These courts have concluded that even if the out-of-state litigation on the contract was foreseeable, *i.e.,* could have been "reasonably anticipate[d]" by the insurer, the insurer had not "purposefully avail[ed] itself of the privilege of conducting activities within the forum State," and so the forum state could not exercise jurisdiction over it. *See Burger King,* 471 U.S. at 474–75, 105 S.Ct. at 2183 (quoting *Hanson,* 357 U.S. at 253, 78 S.Ct. at 1240).

Various post-accident contacts—including letters from the insurer addressed to the insured, health care providers, or others in the forum state, and appearance by an insurer's representative for deposition in the forum state—were also rejected by these courts as a basis for jurisdiction. *See, Batton,* 736 P.2d at 8; *Hall,* 416 So.2d at 230; *Lynch,* 762 F.Supp. at 105. They concluded that the "requisite minimum contacts are not established when the *plaintiff's action* 'requires the defendant to send communications into th[e] forum.'" *Batton,* 736 P.2d at 8 (emphasis in original) (quoting *Hunt v. Erie Ins. Group,* 728 F.2d 1244, 1248 (9th Cir.1984)).

 It seems to us that the logic of these cases is persuasive. An insurer who agrees to defend and provide coverage for its insured in all fifty states may, in doing so, "indicate its willingness to be called into court in the foreign forum," *Rossman*, 832 F.2d at 286, to defend suits brought against its insured. By that agreement alone, the insurer has not, however, purposefully availed itself of the privilege of conducting activities in the forum state so as to subject itself to suit in contract by its insured in that state. Furthermore, it seems clear that post-accident contacts between the insurer and the forum state, upon which the Bahns heavily rely, cannot provide a basis for personal jurisdiction. As even the *Rossman* court recognized,

> [A] party's investigation of possible legal liability after an accident [does not] create[s] in personam jurisdiction that would not otherwise exist. If it did, insurers would be discouraged from legitimate investigation and insureds would be deprived of its benefits.

832 F.2d at 287 n. 2. Thus, if the only basis for personal jurisdiction here were the fifty-state policy provision and the post-accident contacts, we would conclude that the circuit court was correct in finding that Maryland lacked personal jurisdiction over C.M.C.

Nor does the fact that Mr. and Mrs. Bahn were residents of Maryland, the forum state, at the time of the accident, even when combined with these two factors, provide a sufficient basis for jurisdiction over the C.M.C. *See Taylor v. Fireman's Fund Ins. Co. of Canada,* 161 Ariz. 432, 436, 778 P.2d 1328, 1332 (Ariz.Ct.App.1989); *Zimmerman v. American Inter–Insurance Exchange,* 386 N.W.2d 825, 827–28 (Minn.Ct. App.1986). *But see, Szalay v. Handcock,* 307 Ark. 232, 819 S.W.2d 684 (1991). This is so because, in determining whether an assertion of jurisdiction complies with the due process clause, "it is the contacts between the non-resident defendant and the forum state that are determinative, not the contacts between the plaintiff and the forum state." *Zimmerman,* 386 N.W.2d at 828.

■ Here, however, in addition to the fifty-state policy provision, the post-accident contacts, and the Bahns' residence in Maryland there are a number of critical contacts between C.M.C. and Maryland, that were not present between the insurer and the forum state in any of the cases discussed above. C.M.C. sent two "Lapse of Coverage" notices to the Bahns in Maryland. When the Bahns responded with timely payment to C.M.C. from Maryland, C.M.C. then sent them, in Maryland, a policy "declaration" stating that the "policy [was] renewed." In other words, C.M.C. twice renewed [5] the insurance policy in Maryland. As noted within, under Maryland law, renewal of a policy is a new contract, *Reserve Ins. Co. v. Duckett,* 249 Md. at 119, 238 A.2d 536, whose place of contracting is the state to which the policy is delivered and from which premiums are paid. *Aetna Cas.,* 78 Md.App. at 77, 552 A.2d 908. Thus, C.M.C. made two contracts with the Bahns in Maryland, one of which provides the basis of this lawsuit. These contacts clearly indicate that C.M.C. "purposely availed" itself of the privilege of conducting business within this State; they are thus sufficient minimum contacts between C.M.C. and Maryland to justify assumption of personal jurisdiction over C.M.C. in Maryland courts. The only case that we have found that is directly on point so holds, albeit virtually without reasoning. *See Citizens Ins. Co. of America v. Bowman,* 525 So.2d 991 (Fla.Dist.Ct.App.1988) (foreign insurer's act of renewing policy in forum state subjected it to jurisdiction of forum state in suit by its insured); *see also First of Georgia Ins. Co. v. Lloyd,* 557 So.2d 138 (Fla.Dist.Ct. App.1990) (foreign insurer's act of increasing coverage and collecting premium for additional coverage with "knowledge" that insured had become a Florida resident was sufficient to subject it to jurisdiction of Florida court in suit by its insured).

---

**5.** On appeal, C.M.C. asserts that these renewals were invalid because they were based on misrepresentations by the Bahns. This may be true; if so, it provides C.M.C. with a defense to the Bahns claims. It does not, however, mean C.M.C. is not subject to suit on those claims in Maryland.

The Fourth Circuit's decision in *August v. HBA Life Ins. Co.*, 734 F.2d 168 (4th Cir.1984) also provides support for this conclusion. There the court held that an insurer who "insured against the expense of health care for individuals who reside in Arizona but may well move into a different state does not create a sufficient contact between defendant [the insurer] and any state into which they may move." 734 F.2d at 173. The court concluded, however, that the insurer's "solicitation of the execution" of a rider to the policy, which was mailed to the insured in the forum state but never signed by the insured, "was a sufficient predicate for the exercise of long-arm jurisdiction over" the insurer. *Id.* Here, there were far more significant contacts than transmission of an unexecuted rider; thus, the establishment of the predicate for long-arm jurisdiction is even clearer in the case at hand. *See also, Santos v. Sacks*, 697 F.Supp. 275 (E.D.La.1988).

Finally, the exercise of jurisdiction over C.M.C. does not "offend traditional notions of fair play and substantial justice." The Bahns and Mr. Hang are Maryland residents and the accident occurred here. The tort claim could only be tried in this State's courts; the information relating to the accident, including medical reports, are located here. Maryland has a great interest in providing a forum for its residents when their insurers refuse to pay. *See Tate*, 59 Md.App. at 206, 474 A.2d 1353.

For the foregoing reasons, the exercise of personal jurisdiction over C.M.C. in Maryland is authorized under this State's long-arm statute and the Due Process Clause of the Fourteenth Amendment. The circuit court erred in finding to the contrary.

JUDGMENT REVERSED.

COSTS TO BE PAID BY APPELLEE.