657 A.2d 406

**TALEGEN CORPORATION f/n/a Crum and Forster Corporation,**

v.

**SIGNET LEASING AND FINANCIAL CORPORATION.**

No. 1237, Sept. Term, 1994.

Court of Special Appeals of Maryland.

April 28, 1995.

Thomas M. Goss (David H. Hollander, Jr. and Goodell, DeVries, Leech & Gray on the brief), Baltimore, for appellant.

Mark J. Friedman (Susan S. Sands and Piper & Marbury, on the brief), Baltimore, for appellee.

Argued before CATHELL, MURPHY and SALMON, JJ.

SALMON, Judge.

In this case, Signet Leasing and Financial Corporation (Signet), appellee, filed a complaint in the Circuit Court for Baltimore City alleging that Crum and Forster Corporation [1] (CFC), appellant, had wrongfully breached a computer lease agreement. The Complaint and a Writ of Summons were served upon CFC by mail at its corporate headquarters in New Jersey on January 28, 1993. After appellant's Motion to Dismiss for Lack of Personal Jurisdiction was denied by the lower court (McCurdy, J.), without a hearing or an opinion, appellant filed an answer to appellee's complaint. Following extensive discovery, both parties filed motions for summary judgment. On April 27, 1994, appellant's motion was denied. On the same date, appellee's motion was granted, and the trial

---

1. Since Signet filed suit in this case, Crum and Forster Corporation has changed its name to Talegen Corporation. Because the facts at issue involve the former Crum and Forster Corporation, we shall refer to appellant as such.

court (Gordy, J.) entered a judgment in the amount of $362,-000 in favor of appellee. This appeal followed, and appellant has presented us with the following issues:

I.  Can an out-of-state Defendant with no contacts with the State of Maryland be made subject to the jurisdiction of the State's courts solely on the basis of monthly rental payments made to a Maryland corporation pursuant to a lease that the Defendant negotiated with an out-of-state third party but which was subsequently assigned to that corporation?

II.  Can an Assignee enforce an automatic renewal clause of an equipment lease, when the Assignee failed to give notice required by New York law, and the Lessee gave notice of termination to the Assignee's agent?

Answering appellant's first question in the negative, we shall reverse the judgment entered by the circuit court. We therefore need not reach appellant's second issue.

## BACKGROUND

In November of 1984, CFC, a New Jersey corporation, entered into a Master Lease Agreement (Master Lease) with New York based CIS Corporation (CIS). The terms of the Master Lease were to govern any future equipment lease transactions between CFC and CIS.

Section 10 of the Master Lease provided that the Master Lease was assignable, that CFC consented to any assignment, that CFC agreed to provide any documentation or certification necessary to effect any assignment, and that in the event of an assignment, CFC would "send to Assignee as well as [CIS] copies of any notices which are required hereunder to be sent to [CIS]."

Pursuant to the Master Lease, CFC and CIS negotiated Schedule Ref. No. 100237 (the Schedule) in October of 1988 to govern CFC's lease of certain computer equipment from CIS. In December of 1988, CIS assigned the Master Lease to Signet, a Maryland corporation with its principal place of business in Baltimore, Maryland. In accordance with the

assignment provision in the Master Lease, CFC acknowledged the Notice of Assignment sent by CIS and began mailing rental payments on the Schedule to Signet in Maryland. On March 24, 1992, CFC notified CIS that it was terminating the lease of computer equipment listed in the Schedule. On August 7, 1992, Signet wrote to CFC, stating that the termination notice should have been sent to Signet. Signet further stated that, inasmuch as it did not receive notice of the termination until July 2, 1992,[2] Signet was entitled to four months additional rent at $90,500 per month, for a total of $362,000.

Paragraph Three of Signet's complaint claimed that jurisdiction over CFC was based upon Maryland's Long Arm Statute, Md.Code (1974, 1989 Repl.Vol.), §§ 6–102 and 6–103 of the Courts and Judicial Proceedings Article (CJ). In a memorandum filed in support of their Motion to Dismiss for lack of personal jurisdiction, CFC stated:

> The Defendant, Crum & Foster Corporation, ... is a New Jersey Corporation with its principal place of business in New Jersey. CFC is qualified as a foreign corporation only in California and the District of Columbia. It has no charter or license to do business in Maryland; does not do business in Maryland; maintains no bank accounts or telephone listings within the State of Maryland; and has never solicited business or advertised for business in Maryland.

CFC acknowledged that inasmuch as CIS had assigned the Master Lease to Signet, it began sending lease payments on the Schedule to Signet but pointed out that "CFC did not enter into any negotiations with CIS or Signet regarding CIS's decision to assign the Schedule to Signet, nor did CFC have any knowledge that the Schedule would be assigned to a corporation located in Maryland." Appellant further noted that "[a]t no time prior, during or subsequent to the assignment of the Schedule and Lease to Signet has an employee or

---

2. The notice was received from CIS, not appellant.

agent of CFC travelled to Maryland regarding the matter set forth in Signet's complaint."

In response to CFC's motion, Signet said:

CFC's contract with Signet required a continuing performance by CFC of directing monthly payments to Signet in Maryland and the duty of CFC to notify and communicate with Signet with regard to the Computer Equipment. CFC admits that it made payments to Signet in Maryland until September, 1992. This continuing course of contacts from March, 1989 through September, 1992 is sufficient to support an exercise of personal jurisdiction.

## I.

█ The determination of whether an assertion of personal jurisdiction is proper typically involves a two-step process:

[B]efore personal jurisdiction may be asserted under the long-arm statute, it must first be determined whether the statute authorizes the assertion of personal jurisdiction, and, if so, whether the exercise of personal jurisdiction would be consistent with the Due Process Clause of the Fourteenth Amendment.

*Mohamed v. Michael,* 279 Md. 653, 657, 370 A.2d 551 (1977); *Bahn v. Chicago Motor Club,* 98 Md.App. 559, 567, 634 A.2d 63 (1993); *Jason Pharmaceuticals v. Jianas Bros.,* 94 Md. App. 425, 430, 617 A.2d 1125 (1993).

█ At the outset, we note that it is not at all clear whether Maryland's long-arm statute authorizes the exercise of personal jurisdiction in this case. Sections 6–103(a) and (b)(1) read:

(a) *Condition.*—If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.

(b) *In general.*—A court may exercise personal jurisdiction over a person, who directly or by an agent:

(1) Transacts any business or performs any character of work or service in the State;

Signet asserted, in its opposition to CFC's Motion to Dismiss, that § 6–103(b)(1) was applicable. As noted *infra,* Signet's "cause of action" may not have arisen out of CFC's transacting business in Maryland.[3]

■ Although we doubt that CFC's connections with Maryland should be considered "transacting business" in Maryland, we are mindful that this issue is enveloped by the due process issue because, in enacting the long arm statute, the Maryland legislature intended "to expand the exercise of personal jurisdiction to the limits allowed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Camelback Ski Corp. v. Behning,* 307 Md. 270, 274, 513 A.2d 874 (1986) (*Camelback I* ), *vacated and remanded on other grounds,* 480 U.S. 901, 107 S.Ct. 1341, 94 L.Ed.2d 512 (1987), *opinion on remand,* 312 Md. 330, 539 A.2d 1107 (*Camelback II* ), *cert. denied,* 488 U.S. 849, 109 S.Ct. 130, 102 L.Ed.2d 103 (1988); *Mohamed v. Michael, supra,* 279 Md. 653 at 657, 370 A.2d 551; *Geelhoed v. Jensen,* 277 Md. 220, 224, 352 A.2d 818 (1976). Thus, in analyzing the issue, we shall look "to but not beyond the outermost limits permitted in this area by the due process decisions of the Supreme Court." *Camelback I,* 307 Md. at 274, 513 A.2d 874 (quoting *Lamprecht v. Piper Aircraft Corp.,* 262 Md. 126, 130, 277 A.2d 272 (1971)).

## II.

The Supreme Court has stated that, in order for personal jurisdiction to attach under the Due Process Clause, a defendant must have "certain 'minimum contacts' with the forum state such that the maintenance of the suit does not offend

---

**3.** *See Jason Pharmaceuticals, supra,* 94 Md.App. at 430–31, 617 A.2d 1125 for a discussion of case law concerning what types of activity constitute "transacting business"; *see also Bahn, supra,* 98 Md.App. at 568–70, 634 A.2d 63. All elements of a cause of action need not be founded on acts that have taken place in Maryland so long as the plaintiff shows some purposeful act in Maryland in relation to one or more of the elements of plaintiff's cause of action. *Malinow v. Eberly,* 322 F.Supp. 594 (D.Md.1971); *Egeria Societa di Navigazione Per Azioni v. Orinoco Mining Co.,* 360 F.Supp. 997 (D.Md.1973).

'traditional notions of fair play and substantial justice'". *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342–43, 85 L.Ed. 278 (1940)); *accord Presbyterian University Hospital v. Wilson,* 337 Md. 541, 548–49, 654 A.2d 1324 (1995); *Camelback I, supra,* 307 Md. at 274, 513 A.2d 874.

■ It is well established that the level of necessary "minimum contacts" varies depending on whether the jurisdiction asserted is general or specific:

> [A] holding that a forum may exert *general* jurisdiction over a party involves a legal finding that a defendant maintains continuous and systematic contacts with the forum which constitute doing business in the forum. [*Helicopteros Nacionales de Colombia, S.A. v.*] *Hall,* 466 U.S. [408] at 416 [104 S.Ct. 1868, 1872–73, 80 L.Ed.2d 404 (1984) ].... In contrast, *specific* jurisdiction involves more of an expanded factual inquiry into the precise nature of the defendant's contacts with the forum, the relationship of these contacts with the cause of action, and a weighing of whether "the nature and extent of contacts ... between the forum and the defendant ... satisfy the threshold demands of fairness." *Camelback II,* 312 Md. at 336, 539 A.2d at 1110.

*Wilson, supra,* 337 Md. at 552, 654 A.2d 1324. Therefore, "[g]eneral jurisdiction exists where a party has been 'doing business' generally in the forum state, but the cause of action is not related to those contacts, [and] specific jurisdiction exists where the cause of action arises out of a party's contacts with the forum state." *Jason Pharmaceuticals, supra,* 94 Md.App. at 430, 617 A.2d 1125 (citing *Camelback II, supra,* 312 Md. at 388, 539 A.2d 1107).

■ Signet asserts that "[i]t is beyond question that CFC has had at least 'minimum contacts' with Maryland to place the exercise of *specific* jurisdiction over CFC well within the limits of due process." (Emphasis added). Although Signet argues, in support of its claim of specific jurisdiction, that "CFC's contacts with the Maryland forum arose from the

[Master] Lease with Signet in Maryland for the Equipment owned by Signet," it is well established that it is the *cause of action* that must arise from the contacts. *See Camelback II, supra,* 312 Md. at 338, 539 A.2d 1107.

In this case, it does not appear that the cause of action arose out of CFC's "contact" with Maryland, *i.e.,* the mailing of substantial rental payments, but rather arose from CFC's alleged breach of the notice provision in the Master Lease that required CFC to provide the assignee with any notice of termination. Signet's cause of action can be classified as arising from CFC's *failure* to notify Signet in Maryland of its intention to terminate its obligations under the schedule and its *failure* to make certain rental payments to Signet in Maryland. It is extremely doubtful that the failure to make a contact that was required by virtue of an assignment provision in a lease entered into out of the forum state is in fact a "contact" with the forum state.

■ In any event, we need not here decide whether the cause of action arose out of or related to CFC's contact with Maryland.[4] Assuming that a specific jurisdiction analysis even applies, in order to find that an exercise of specific jurisdiction was proper we still must find that CFC maintained "sufficient minimum contacts with [Maryland] such that the exercise of jurisdiction meets the 'general test of essential fairness.'" *Wilson, supra,* 337 Md. at 552, 654 A.2d 1324. CFC must have purposefully availed itself of "conducting activities in the forum, thereby invoking the benefits and protections of the forum's laws." *Id.* at 556, 654 A.2d 1324 (quoting *Cubbage v. Merchent,* 744 F.2d 665 (9th Cir.1984)).

---

4. In *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), the Supreme Court specifically left open the issue of what sort of nexus between a cause of action and the contacts is necessary to satisfy the requirement that a cause of action "arise[s] out of" or "relate[s] to" the contacts. *Id.* at 415 n. 10, 104 S.Ct. at 1872 n. 10. *See Camelback I,* 307 Md. at 285 n. 7, 513 A.2d 874.

## III.

In an oft-quoted excerpt, the Supreme Court stated, in the landmark case of *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), that "[t]he unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum state...." *Id.* at 253, 78 S.Ct. at 1239–40; *quoted in Geelhoed, supra,* 277 Md. at 229, 352 A.2d 818; *Poole & Kent Co. v. Equilease Associates,* 71 Md.App. 9, 21, 523 A.2d 1018 (1987). The facts involved in *Hanson,* as summarized by the Court of Appeals, were as follows:

> The cause of action in *Hanson* arose out of a trust settled in Delaware and concerned the effectiveness of the exercise of a power of appointment in Florida. At the time of execution of the deed of trust in Delaware, the settlor was a Pennsylvania domiciliary and the trustee was a Delaware bank. Subsequently the settlor moved to Florida where she attempted to exercise the power of appointment in question. After the death of the settlor, a Florida court, in a proceeding in which the Delaware trustee did not appear, held that the trust, and therefore the power of appointment, was invalid under Florida law. When a Delaware court refused to give full faith and credit to the Florida court's decree, the jurisdiction of the Florida court over the Delaware trust company became the issue.

*Geelhoed v. Jensen, supra,* 277 Md. at 228–29, 352 A.2d 818. The *Hanson* Court held that the contacts between the Delaware trust company and Florida were insufficient to warrant the exercise of personal jurisdiction by the Florida courts:

> [T]his action involves the validity of an agreement that was entered without any connection with the forum state. The agreement was executed in Delaware by a trust company incorporated in that State and a settlor domiciled in Pennsylvania. The first relationship Florida had to the Agreement was years later when the settlor became domiciled there, and the trustee remitted the trust income to her in that State.... Consequently, this suit cannot be said to be

one to enforce an obligation that arose from a privilege the defendant exercised in Florida.

*Hanson, supra,* 357 U.S. at 252, 78 S.Ct. at 1239.

■ Applying the above to the facts of the case *sub judice,* it is apparent that CFC's "contact" with Maryland, *i.e.,* the mailing of substantial rent payments to Signet in Baltimore, was the result of the unilateral act of a non-party, CIS, in assigning the Master Lease to Signet. The assignment provision in the Master Lease stated that CFC consented to any assignment of the Master Lease, required CFC to provide the assignee with certain documentation, and required CFC to pay rent and provide any notice of termination to the assignee. CFC did not have any control over choosing the assignee, and it is undisputed that CFC had no contacts with Maryland prior to the assignment. Under these circumstances, we cannot say that the mailing of rent payments to Signet in Maryland pursuant to the assignment provision of a contract created in a foreign state was an "act by which [CFC] purposefully avail[ed] itself of the privilege of conducting activities within [Maryland.]" *Camelback I, supra,* 307 Md. at 337, 513 A.2d 874 (quoting *Burger King v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985)).

■ We therefore hold that the unilateral act of a third party lessor in assigning a lease agreement, which action necessarily requires the lessee to mail payments and send certain notices to the assignee, does not create the necessary "minimum contacts" between the lessee and the State in which the assignee is located. Similar unilateral acts by third parties have been held insufficient to satisfy the due process "minimum contacts" requirement. In *Mellon Bank v. DiVeronica Bros.,* 983 F.2d 551 (3d Cir.1993), the assignee of certain accounts receivable sued a New York contractor owing monies on some of the accounts. Although the suit was filed in United States District Court for the Eastern District of Pennsylvania, the defendant's only contacts to the forum state arose from the assignment. The Court emphasized that the Letter Agreement, in which the defendant acknowledged that

certain debts had been assigned to the plaintiff, could not be construed as creating "minimum contacts" with the forum state. *Id.* at 556–57. Pointing out that the New York defendant had no involvement in the creation of the original loan documents and had no "involvement in the subsequent assignment of the accounts receivable to [plaintiff]," the exercise of personal jurisdiction over defendant was not justified. *Id.; see also Federated Rural Elec. Ins. v. Kootenai Elec.,* 17 F.3d 1302, 1305 (10th Cir.1994) (holding that "[t]he unilateral act of an insurer in relocating its corporate headquarters does not create the necessary minimum contacts between the state of the insurer's relocation and its insureds" when the insureds only contact with the forum was filing claims at the insurer's corporate headquarters).

## IV.

In conclusion, we observe that, if Signet's position were adopted by this Court and if other jurisdictions were to follow our lead, unpalatable results might very well follow. For instance, if an Idaho consumer took out a loan in Idaho, that consumer could be made to defend a suit in Florida merely because the consumer began sending payments on the loan to Florida after being advised that the loan had been assigned to a lender headquartered in Florida. We are not prepared to so extend the limits of personal jurisdiction to this level and, more importantly, do not believe that the Due Process Clause of the Constitution warrants such an extension. Thus, for the reasons aforementioned, CFC's Motion to Dismiss should have been granted.

**JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY WITH INSTRUCTIONS TO DISMISS SIGNET'S COMPLAINT; COSTS TO BE PAID BY SIGNET.**